## Murphy v. The Home Life Insurance Company of America

*J. Desmond Kennedy, Kelly, Fitzgerald & Kelly* and *Robert E. O'Brien,* for plaintiff.

*Arthur S. Arnold* and *DeLaney, DeLaney & DeLaney,* for defendant.

EAGEN, J., and BARTHOLD, J., third judicial district, specially presiding, July 16, 1942.—This case comes before the court en banc upon defendant's motions for judgment non obstante veredicto and new trial. An action in assumpsit was instituted against defendant, The Home Life Insurance Company of America, by plaintiff, Mary Murphy, the named beneficiary in a policy of life insurance issued by defendant company upon the life of Joseph James Murphy, plaintiff's husband. On November 22, 1926, defendant company issued a $1,000 20-year endowment policy to plaintiff's husband. On February 24, 1940, plaintiff was duly named beneficiary on said policy. On November 22, 1940, the date for the payment of the last quarter-annual premium for the year 1940, in the amount of $12.97, the insured and plaintiff went to the Scranton branch office of defendant company and requested the cash surrender value of the policy, stating that they did not have the money to pay the premium. Both of them then signed a written request for the cash surrender value on a company form and delivered the policy to the assistant superintendent of defendant company. The application, together with the policy, was sent to the executive office of the company in Philadelphia, whereupon defendant company, on November 29, 1940, made and executed a check to the order of the insured in the sum of $499.68. This check represents the cash surrender value of the policy, less insured's loan of $100 on the policy admittedly unpaid. The check was received at the Scranton branch office on December 2, 1940, and on the same date was mailed to the insured

at his home address where it was delivered by the post office on December 3, 1940. The insured died on November 30, 1940, at 2:00 p.m. Plaintiff then attempted to have defendant company stop the cash surrender on the policy and her attorneys tendered to defendant company, at its office in Scranton, the sum of $18.97, being the premium of $12.97 and interest of $6. Defendant company refused the tender. Plaintiff as beneficiary under the policy brought suit for the face amount of the policy, viz, $1,000 with interest, less the $100 policy loan. All of the above material facts were either admitted by virtue of the pleadings or upon the trial, so that there were no disputed questions of fact for the jury. Both sides accordingly asked for binding instructions and the trial court directed a verdict for plaintiff in the sum of $977.25. Said sum represents the face amount of the policy less the $100 loan plus interest.

We will first consider defendant's motion for judgment non obstante veredicto. On this motion the only matter for our determination is whether there is sufficient evidence to support the verdict. In our discussion, we will confine ourselves to a consideration of this question, having in mind the rule that where judgment n. o. v. is requested the testimony must be viewed in a light most advantageous to plaintiff, who must be given the benefit of every inference reasonably deduced from the evidence with its conflicts resolved in her favor: Carter et al. v. Pittsburgh Railways Co., 327 Pa. 586.

Defendant concedes its liability to the estate of the insured for the cash surrender value of the policy less the amount of the policy loan, but denies any liability to the beneficiary.

The case presents the single issue whether or not the policy was effectively surrendered prior to the death of the insured.

Plaintiff contends that the insurance contract contains no provision covering requests for the cash sur-

render value prior to a default in the payment of premium, and interprets the provisions of the policy governing cash surrender values as applicable only where there has been a default in the payment of premium. Plaintiff also contends that the insured had not defaulted in the payment of the quarter-annual premium when on November 22, 1940, the premium due date, he, together with the plaintiff as beneficiary, applied for the cash surrender value of the policy; that, therefore, the insured's written request for the cash surrender value and his delivery of the policy therewith constituted merely an offer by the insured to exchange the insurance contract for the cash surrender value, which offer required an acceptance by the defendant company and a communication of that acceptance to the insured offeror prior to his death. The form for the cash surrender value signed by the insured and plaintiff contained a request that the check be sent to the insured at his residence. The check was mailed by defendant company to its Scranton office where it was received on December 2, 1940, and on the same day mailed to the insured at his residence. It was not delivered to insured's residence until December 3, 1940, three days after insured's death. Plaintiff contends that the defendant company did not communicate its acceptance to the insured prior to his death and that therefore there was no binding contract to exchange the policy for the equivalent of the cash surrender value.

Defendant contends that the nonforfeiture provisions of the policy give to the insured the option of obtaining the cash surrender value of the policy, that this option is a continuing irrevocable offer on the part of the company available to the insured in accordance with its terms, and that the insured accepted the offer when he made his request for the cash surrender value on November 22, 1940.

The distinction represented by the opposing contentions advanced in the case before us is set forth in the case of Landy v. New York Life Insurance Co., 170 Misc. 942, 11 N. Y. Supp. (2d) 622. This case is authority for the proposition that if the request for surrender is made when the contract is in default the insurer has no option other than to comply and the surrender is complete without the insurer's action. If, however, the request is made when the policy is not in default, it amounts only to an offer which requires acceptance by the company prior to the insured's death.

Upon oral argument both sides agreed that the principle enunciated in the New York case is a valid one. They disagree, however, as to its application to the facts of the present case. Was insured's request for the cash surrender value of the policy an offer on the part of the insured requiring acceptance by the insurance company, or was it the acceptance of a continuing and irrevocable offer of the insurance company contained in the policy of insurance?

We are of the opinion that under the terms of the policy before us the cash surrender value is fixed for any given period after premiums shall have been paid for three full years, and is payable by the company upon written application therefor by the owner of the policy and the legal surrender of all claims thereunder to the company at its executive office, before default in the payment of premium as well as after default in the payment of premium. If, however, application therefor is made after default in the payment of premium on the due date, the application must be made within 31 days from the due date of the premium in default.

The nonforfeiture provisions of the policy are the following:

"If this policy shall lapse through nonpayment of premium, after premiums shall have been paid for three full years, the Company will secure to the owner

of the policy, a form of insurance, the net value of which shall be the reserve on the policy at the date of lapse, computed according to the American Experience Table of Mortality, with interest at three and one-half per centum per annum, less a sum not to exceed one-fifth of the said reserve, nor one per centum of the face of the policy, less any existing indebtedness to the Company on the policy. At the end of the tenth and succeeding years, said net value shall be the full reserve, without any surrender charge. The net value shall constitute the cash surrender value of the policy. This nonforfeiture value shall be secured to the owner of the policy through one of the following provisions:—

"First:—The automatic extension of the net amount insured by this policy, as shown in the table on the following page, for the number of years and months, at the expiration of which time the insurance shall cease, together with the paid-up pure endowment, if any, payable at the end of the endowment period, if the insured is then living, or

"Second:—The issue of paid-up endowment insurance, payable at the same time and on the same conditions as this policy, for the amount shown in the table on the following page, upon the written application therefor by the owner of the policy, and the legal surrender of all claims thereunder to the Company at its Executive Offices within thirty-one days from the due date of the premium in default, or

"Third:—The payment of the cash surrender value shown in the table on the following page, upon the written application therefor by the owner of the policy, and the legal surrender of all claims thereunder to the Company at its Executive Offices, within thirty-one days from the due date of the premium in default. The figures in the tables on the following page are computed according to the provisions of this policy and upon the assumption that premiums have been paid in full for the number of years stated, and that there is

no indebtedness on the policy. Should any indebtedness exist, it shall be deducted from the cash value of the policy and the other values shall be correspondingly reduced. The cash value of the paid-up endowment or extended term insurance and pure endowment, if any, granted upon the lapse of this policy will be the full reserve at the time of surrender, less any indebtedness to the Company under the policy, and will be paid to the owner thereof, upon written request and proper release."

It is to be noted that the above provisions secure the nonforfeiture value of the policy in three ways: First, by the automatic extension of the net amount insured by the policy; second, by the issue of paid-up endowment insurance; and third, by the payment of the cash surrender value. The extension of the net amount insured by the policy follows automatically in the event of a lapse of the policy. The issuance of paid-up endowment insurance and the payment of the cash surrender value, however, do not follow automatically in the event of a lapse of the policy. As a matter of fact, written application for either the issuance of paid-up endowment insurance or the cash surrender value must be made within 31 days from the due date of the premium in default, that is, before the policy has lapsed.

The word "lapse" in the nonforfeiture provision of the policy must be read in connection with the provisions of the policy pertaining to the payment of premiums. The provisions governing "payment of premiums" are the following:

"Payment of Premiums:—Premiums are due and payable annually in advance but (including the first year's premium) may be paid in semi-annual or quarterly instalments. Except as herein provided the payment of a premium or instalment thereof shall not maintain this policy in force beyond the due date of the next premium or instalment of premium.

"(*b*) Notice of each and every premium due or to become due hereon is given and accepted by the delivery and acceptance of this policy. Premiums are payable in advance at the Executive Offices, or to any agent of the Company upon delivery, on or before the date due, of a receipt signed by the President, Secretary or Treasurer of the Company and duly countersigned by said agent.

"(*c*) A grace of thirty-one days (without interest) shall be granted for the payment of every premium or instalment of premium after the first year's premium or instalment thereof during which time the insurance shall continue in force.

"(*d*) If any premium shall not be paid on or before the date when due, the liability of the Company shall only be as herein provided."

If the insurance shall continue in force during the 31-day grace period (paragraph (*c*) above) the policy cannot lapse until the end of the 31-day grace period. The word "lapse" in the first paragraph of the nonforfeiture provision therefore cannot be construed to refer to the second and third options given to the insured, because they are available to him only upon written application if made within 31 days from the due date of the premium in default. It is to be noted also that in the third paragraph of the nonforfeiture provision the following clause appears:

"The cash value of the paid-up endowment or extended term insurance and pure endowment, if any, granted upon the lapse of this policy will be the full reserve at the time of surrender, less any indebtedness to the Company under the policy, and will be paid to the owner thereof, upon written request and proper release."

It is evident from a reading of all the provisions of the policy that the cash surrender value is available to the insured even if there be no default in the payment of premium, the only condition being that written

application therefor be made by the owner of the policy and all claims thereunder surrendered within 31 days from the due date of the premium.

We have not overlooked the fact that the words of the policy are "within thirty-one days from the due date of the premium in default". Even if we assume that under the terms of the policy the cash surrender value is a matter of legal right to the insured only in the event of a default in the payment of premium, it follows that the creation of a default is optional with the insured. The right to have the cash surrender value, by making a default in the payment of a premium, includes the right to have the cash surrender value by electing at any time to make such default and giving due notice to the company of such election.

This is the precise holding of the Supreme Court of the United States in the case of Lovell et al. v. St. Louis Mutual Life Insurance Co. et al., 111 U. S. 264. This case involved an option of the insured to convert an insurance policy from an annual premium policy to a paid-up policy. In passing upon the rights of the insured, Mr. Justice Bradley stated the following (p. 269):

"It is true the precise terms of the condition are, that the policy shall be commuted in case *default* is made in the payment of any premium; but as the making of a default is entirely optional with the insured, it follows that the conversion of the policy from an annual-premium policy to a paid-up policy, is at the option of the insured, at any time after the payment of the first three annual premiums. Though in no default, he may elect to pay no more premiums, and may give notice to the company to that effect . . . The right to have the policy commuted and reduced to a paid-up policy, by making a default in the payment of a premium, in legal effect includes the right to have it so commuted and reduced by electing at any time to make such de-

fault and giving due notice to the company of such election."

In support of our position, we cite also the following cases: Lipman v. Equitable Life Assurance Society of the United States, 58 F.(2d) 15; Pacific States Life Insurance Co. v. Bryce, 67 F.(2d) 710; Pequot Manufacturing Corp. v. Equitable Life Assurance Society, 253 N. Y. 116, 170 N. E. 514; State Life Insurance Co. v. Finney, 216 Ala. 562, 114 So. 132; Northwestern Mutual Life Ins. Co. v. Joseph, 31 Ky. 714, 103 S. W. 317, 12 L. R. A. (N. S.) 439; McCormick v. Travelers' Insurance Co., 215 Mo. App. 258, 264 S. W. 916; Cooper v. West, 173 Ky. 289, 190 S. W. 1085; Lovett v. Phoenix Mutual Life Insurance Co., 44 Fed. Supp. 888 (U. S. D. C., Rhode Island) ; Manhattan Life Insurance Co. v. Allison, 64 Pac. (2d) 1265.

In the case before us for determination, plaintiff's own testimony reveals that she told the agent of defendant company that "they could not pay the premium and wanted the cash surrender value", whereupon they executed a written application for the cash surrender value of the policy and delivered up the policy to the defendant company. The written request for cash surrender value, by its terms, definitely surrenders the policy. Said request is as follows:

"I, Joseph James Murphy of 217 Hickory St., the owner of Policy No. 139256 issued on the 22 day of Nov., 1926 by the Home Life Insurance Company of America hereby surrender the said policy and request its full value in cash according to the terms and conditions thereof.

"In Witness Whereof, I have hereunto set my hand this 22 day of Nov. 1940. Joseph James Murphy, Insured. Felix Bergeski, Witness. Mary Murphy, Beneficiary. Felix Bergeski, Witness. Send Check to Joseph James Murphy, Address 217 Hickory St., Peckville, Pa. Approved Felix Bergeski."

Under the above conditions there was no reason for either party thereafter to await the expiration of the 31-day grace period.

The following portions of the court's opinion in Lipman v. Equitable Life Assurance Society of the United States, supra, at page 18, are directly applicable to the present case:

"Since the insured had the option to surrender her policy and take the cash surrender value . . . there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option."

The case of Landy v. New York Life Insurance Co., supra, upon which plaintiff strongly relies in support of her contention, qualifies its subtle distinction between requests for cash surrender value prior to default and after default with the following statement which appears at page 625 of the court's opinion:

"There is, however, nothing in the insured's request or in the receipt issued by the insurer to indicate that the application was made in contemplation of a default on June 15, 1938, and was intended to take effect after such default. . . . To put the situation somewhat differently, the answer admits that the defendant, prior to the death of the insured, had expressly refused to commit itself as to whether it would accept the insured's request for the cash surrender value of the policy."

In the Landy case, supra, the policy contained the following provisions (p. 624):

"Surrender Value—In event of default in payment of premium after three full years' premiums have been paid, the following benefits apply: . . .

"(c) Cash Surrender Value—If the policy shall not have been indorsed for participating Paid-up Insurance, the insured, within three months after such default, but not later, may surrender this Policy and all claims thereunder and receive its Cash Surrender Value as at date of default less any indebtedness hereon."

The policy took effect June 15, 1934, and the premiums were paid up to June 15, 1938. On June 10, 1938, the insured delivered the policy to defendant together with a signed form requesting the cash surrender value and in return was given a receipt on a printed form which contained the following statement:

"Said papers are received without prejudice to any of the rights of New York Life Insurance Company and without committing it to any action in connection with said policy."

The Landy case differs widely from the case before us. In the case before us defendant company did not expressly refuse to commit itself as to whether it would accept insured's request for the cash surrender value. Quite to the contrary, the written request for the cash surrender value of the policy, by its terms, is a definite surrender of the policy. Furthermore, prior to signing the written request for the cash surrender value, and on the very date for the payment of the quarter-annual premium, viz, November 22, 1940, plaintiff and the insured made the definite statement that "they could not pay the premium and wanted the cash surrender value." Accordingly the application for the cash surrender value was made in contemplation of a default.

For the reasons hereinabove given, we are of the opinion that the insured effectively surrendered his policy prior to his death in return for the cash surrender value of the policy. The insured's exercise, prior to his death, of his option to take the cash surrender value of the policy precludes recovery on the policy for

insured's death occurring subsequent to insured's election to take the cash surrender value thereon. In view of this holding, a discussion of defendant's motion for a new trial is rendered unnecessary.

### Order

And now, July 16, 1942, defendant's motion for a new trial is refused and rule discharged. Defendant's motion for judgment non obstante veredicto is granted and rule made absolute, and judgment is directed to be entered notwithstanding the verdict in favor of defendant, The Home Life Insurance Company of America, upon payment of the jury fee, and the evidence taken upon the trial is certified and filed and made a part of the record.

---

NOTE.—An appeal from the foregoing order to the Superior Court was nonprossed.