Varas, Appellant, *v.* Crown Life Insurance Company, Appellant.

Argued March 20, 1964. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Lewis Weinstock*, with him *Roy L. Cameron, Jr., David S. Foulke, James M. Marsh*, and *LaBrum and Doak*, and *Foulke, Knight & Porter*, for plaintiff.

*Owen B. Rhoads*, with him *Arthur W. Leibold, Jr.*, and *John G. Laylin* and *Covington & Burling*, of the Washington, D.C. Bar, for defendant.

OPINION BY WATKINS, J., September 17, 1964:

These appeals by the plaintiff, Alicia Varas, and the defendant, The Crown Life Insurance Company, are from the judgment of the Court of Common Pleas of Montgomery County, entered on a directed verdict in favor of the plaintiff and against the defendant in the amount of $3680 with interest, representing the amount of premiums paid on an insurance policy; and from the refusal of post trial motions for judgment n.o.v. or for a new trial.

The policy in suit was applied for by the mother of the plaintiff, as her guardian, in Havana, Cuba, in April, 1944. The policy, written upon the life of the plaintiff, was delivered by the defendant company in Cuba on July 12, 1944 with a date of issue of May 23, 1944. The contract was a twenty-year endowment

policy in the face amount of $5000. At the time of the delivery the plaintiff was a resident and citizen of Cuba; the defendant was a Canadian insurance company doing business and having a place of business in Cuba. Until 1951 premiums were paid in United States dollars which were legal tender at that time. From 1951 and through 1960 the premiums were paid in pesos.

The Canadian company defendant at the time of the suit was doing business and had an office both in Cuba and in Montgomery County, Pennsylvania, U. S. A. The trouble in Cuba caused the plaintiff to leave that country in August, 1960 and she has been a resident of the United States since that time in Florida and Georgia and expresses the intention of making and continuing her residence here. She is a political refugee without citizenship. She has been admitted as a permanent resident of the United States and is a civil citizen. *Blanco v. Pan-American Life Ins. Co.,* 221 F. Supp. 219 (1963); *U. S. v. Wong Kim Ark,* 169 U.S. 649, 18 S. Ct. 456 (1888).

The plaintiff demanded payment by the company of the guaranteed cash surrender value of the policy and the company refused payment on the ground that the contract is governed by the laws of Cuba. The plaintiff, by a suit in assumpsit, demanded the cash surrender of the contract of insurance as provided in the policy or in the alternative, the return of the premiums paid. The defendant's answer admitted the execution and delivery of the policy of insurance and that the premiums were paid but, as new matter, alleged that performance in the United States is prohibited by Cuban law and its effect upon the contract, Cuba being the place of the creation of the obligation; that the monetary provisions of the policy were waived and plaintiff estopped from raising them because of the payment of premiums in pesos; and because of the International Monetary Fund Agreement.

At the conclusion of the trial a verdict was directed against the plaintiff on the first cause of action, the cash surrender value, and in her favor on the alternative cause of action, the return of the premiums paid. The jury determined that she was entitled to interest. The plaintiff and defendant filed cross post trial motions and they were dismissed. Both parties appealed.

Since oral argument, we have been asked by the defendant company to disregard the question raised as to the impact of the International Monetary Fund Agreement as on April 2, 1964, effective on that date, the Republic of Cuba had withdrawn from membership.

Cuban Law No. 13 passed on December 23, 1948 provided that United States currency should cease being legal tender and cease having debt redeeming force but by Decree 1384 dated the 20th of April, 1951 extended the status of legal tender of currency of the United States until June 30, 1951 and provided that after that date it would cease to be legal tender or have debt redeeming force. It also provided that all contract obligations enforceable in Cuba should be settled only in the national currency.

In January of 1959 the Batista government was replaced by that of Fidel Castro. The Castro government was recognized and still continues to be recognized by the United States as the government of the Republic of Cuba.

Law No. 568 effective October 2, 1959 made all transfers, payments or any dealings in foreign currency felonies and by a law dated February 23, 1961 provided that only coins minted and bills issued by the National Bank of Cuba should be legal tender.

The defendant contends that Decree 1384 modified its dollar obligation to the plaintiff while law 568 must be interpreted to prohibit payment of the policy in dollars. The defendant therefore refused payment on that theory. The defendant company contends that

where the contract is silent as to performance the law of the place where it is made governs. The plaintiff claims that not only can the place of performance be inferred from the policy to be the United States as well as Cuba but that the place of performance is, to wit, the place where the attempt to exercise the option of the payment of the guaranteed value took place, which was Pennsylvania, so that the monetary laws of Cuba do not apply.

The court below agreed with the defendant company that the monetary laws of Cuba apply as it was the place of the making of the contract and "since no place of performance was stated, the contract must be performed in Cuba. Therefore, no recovery can be based on a demand for performance in Pennsylvania."

However, the court below agreed with the plaintiff that it was excusably impossible to obtain performance in Cuba and said: ". . . the law implies a quasi-contractual obligation on the party receiving such performance to pay its fair value: West v. Peoples First National Bank & Trust Company, 378 Pa. 275 (1954) . . . The same principle is applicable here. The plaintiff is obligated to go to Cuba in order to receive any benefits under the insurance contract. It is excusably impossible for her to do so. She had partly performed the contract before this impossibility arose. She is entitled to recover the value of that performance." This is on the basis of unjust enrichment and the law governing the performance of an insurance contract is not applicable and so Cuban law that might bar a recovery is of no effect.

We believe that the plaintiff was entitled to enforce the terms of the contract in regard to the cash surrender option in Pennsylvania. We do not believe that the monetary laws of Cuba are applicable.

The contract, admittedly, made in Cuba with a foreign insurance company provided that the currency

contemplated for use by the parties was "dollars, lawful money of the United States of America . . . and every amount payable to or by the company under this policy shall be payable in such currency." The entire contract was written in Spanish but it is noteworthy that it unequivocally called for all payments to be in United States dollars. This was not by happenstance but was done with the deliberate intention to make sure that the sound currency of the United States was the currency to be used rather than the uncertain, and even then fluctuating, value of Cuban pesos. We can take judicial notice of this factual consideration. *Pan-American Life Ins. Co. v. Recio,* 154 So. 2d 197 (Fla. 1963). Up until the advent of the Castro regime the monetary exchange in Cuba between dollars and pesos was one for one. Today the peso in the United States is valueless. In the application for the policy the following question was asked. "State here any special provisions desired in the policy"; the answer was "currency of the United States of America". So both parties to this contract agreed to a "special provision" for payment in dollars. The policy further provided that payment of premiums must be made to the home office of the company or elsewhere in exchange for the company's printed form of official receipt.

The Republic of Cuba had the right and the power to specify what would be legal tender within its territory and at the time of the contract American dollars were legal tender in the Republic. The currency selected by the plaintiff and the defendant in the contract was the national currency of the United States, and it was only incidentally a currency having debt redeeming force in Cuba in 1944. The national currency of Cuba was pesos but the parties chose to express their obligations in dollars. Only the Congress of the United States has the legislative jurisdiction to alter the characteristics of the dollar and so long as

the contract is performable in the United States no act of the Republic of Cuba can alter the duty of performance here.

"Generally a contract is construed under the law of the place where it was made, but when the place of performance differs from the place of making, the law of the place of performance may prevail . . . Thus a contract normally is interpreted according to the lex loci contractus . . . Generally a contract is deemed to have been made when and where the last act necessary for its formation is done . . . regardless of the place of making or place of performance of a contract, the lex fori governs the form of the remedy." 8 P.L.E. §122.

The court below entered judgment against the plaintiff in her claim for the guaranteed value of the policy because of the general rule holding: "Where a life insurance contract does not fix the place of performance the presumption is that the contract was to be performed where it was entered into: White v. Empire State Degree of Honor, 47 Pa. Superior Ct. 52 (1911). The contract in the instant case was entered into in Cuba, and since no place of performance was stated, the contract must be performed in Cuba. Therefore, no recovery can be had based on a demand for performance in Pennsylvania." By this decision the court below held that the Cuban monetary laws prevented acceptance of the option in the United States.

It is true that a contract is deemed to have been made when and where the last act necessary for its formation is done and that place, so far as this endowment policy is concerned, is the Republic of Cuba where the delivery of the policy took place. But contained in the policy contract and an integral part of the consideration in its purchase are several options, one of which is pertinent to this case and reads as follows:

"Guaranteed values. At the end of the third or any subsequent policy year, or within thirty-one days there-

after, provided all premiums to date have been paid in full, and in the absence of any legal restrictions, and upon legal surrender of this policy to the Company for cancellation, the Company will grant, subject to adjustment in case of indebtedness to the Company, one of the following options: (a) A cash value of the amount stated in the following schedule:

| End of Policy Year | Cash Value |
|---|---|
| * * * | * * * |
| 17 | $789.00 |
| * * * | * * *" |

It is also noteworthy that beneath the schedule of guaranteed values for each $1000 of sum insured the following appears: "The currency unit of the above guaranteed values is that stipulated on the first page hereof." (Dollars, lawful money of the United States of America).

The election to accept this option could be made at any time before performance of the obligation of the principal contract by its maturity or the death of the insured. The option has been described as a continuous, irrevocable offer which can only materialize into a contract by its acceptance by the defendant. *U. S. v. Penn Mutual Life Ins. Co.*, 130 F. 2d 495. We believe that the cases are at one in holding that the rights of the parties are fixed when an option given by a policy is exercised by the insured. *Lipman v. Equitable Life Assurance Society*, (C.C.A. 4) 58 F. 2d 15; Goldin, The Law of Insurance in Pennsylvania, Vol. II, 2d Ed., §763; 91 A.L.R. 1450. The option is executory so the law governing the place of performance in this case, the acceptance of the offer of guaranteed payment is the place of its execution and performance. *Liebeskind v. Mexican Light & Power Co.*, 116 F. 2d 971 (2d Cir. 1941).

So if we agree with the court below that the principal contract, the endowment policy, was made in Cuba

and refuse to accept the contention of the plaintiff that it can be inferred from the currency provisions in the policy that the place of performance was the United States of America this reasoning would not apply to the option where only the offer was made in Cuba. The last act necessary to create the obligation of the payment of the cash surrender value took place in the United States. An inference is created by the currency provisions that the place of performance of the option could very well be either Cuba or the United States. Once the insured exercised her option under the policy, without anything further being done by the insurer, the rights of the parties are fixed. *Pacific States Life Insurance Co. v. Bryce,* 67 F. 2d 710; *Lipman v. Equitable Life Assurance Society,* supra. See also: Cases Annotated in 91 A.L.R. 1450.

The contract provides that the guaranteed value will be paid upon "legal surrender of this policy to the company for cancellation." The home office of this company is in Toronto, Canada where the policy was executed by the officers of the company and its legal residence is wherever it has an office and wherever it is legally entitled to do business. One such legal residence is Montgomery County, Pennsylvania and it was to this office that the legal surrender of this policy was directed.

It is true that the option itself says: "In the absence of any legal restrictions", but this could only refer to legal prohibitions as to payment of such guaranteed values and does not refer to the medium of payment and no such restriction appears in those sections applying to medium of payment.

The defendant maintains an office to do insurance business in the Commonwealth of Pennsylvania; it is the place where plaintiff exercised her option, accepted the continuing offer of the insured and by this performance created the full contractual obligation. *David*

*v. Veitscher Magnesitwerke Actien Gesellschaft,* 348 Pa. 335, 35 A. 2d 346 (1944).

We agree that the currency laws of Cuba must be honored by the government of the United States and by our courts if Cuban law is applicable. The power of a sovereign state over its currency is absolute. This was especially true when both countries were signatories to the Bretton Woods Agreement, a treaty of the United States and therefore a part of the supreme law of the land. The Bretton Woods agreement specifically requires the recognition and honoring of Cuba's currency laws. The Bretton Woods agreement brought into being the "International Monetary Fund Agreement", 60 Stat. 1401-1411, 1945. However, Cuba has withdrawn from membership so that a new look must perchance be taken at the cases based on the fund agreement when membership was held by both countries. It is true, however, that even prior to the currency treaty foreign exchange regulations were held to be applicable in suits in the United States. This is in line with our public policy to prevent evasion of currency obligations in the nation where the obligation is payable. *Steinfink v. N. German Lloyd S. Co.,* 176 Misc. 413, 27 N.Y.S. 2d 918 (Sup. Ct. 1941).

The plaintiff contends that the Cuban laws were not properly admitted and further they were not proven to be currently in effect. We will not discuss this question because we are holding that even if they are in effect, the law of Cuba is not applicable and the law of Pennsylvania is, where the creation of the contractual rights under the option and its performance took place in Pennsylvania.

"The place of performance is the state where, either by specific provision or by interpretation of the language of the promise, the promise is to be performed." Restatement, Conflict of Laws, §355, page 434 (Restatement, Conflict of Laws, Pa. Annotations §355,

page 122. Pennsylvania law is in accord with Restatement. See collection of cases).

"When a contract involves a promise to do one thing or another at the option of either party the place of performance is undetermined until the option is exercised, and it then becomes the place of performing the promise which is chosen by the party having the option." Restatement, Conflict of Laws, §356, page 435.

In the instant case the plaintiff had the option in the event she did not wish to await the maturity of the policy, to accept the offer of the guaranteed surrender value. She did this in Pennsylvania, where the defendant had a corporate residence and was authorized to do business.

As to the waiver and the contention of estoppel there is some question in this record whether payment of premiums by the plaintiff was in dollars even though the company deposited it in pesos. But again if we determine that the option was exercised in Pennsylvania when the offer was accepted the rights of the parties are fixed at that time in a full contractual obligation.

The witness for the company admitted that regardless of whether pesos or dollars were delivered to the company in Cuba in payment of premiums, such payment would be converted to a peso credit upon deposit in the bank. The notice of premium in some instances contained the legend: $217 M.N. This was indicated to mean "Moneda Nacional" so that the premium so marked called for payment in pesos rather than dollars and the defendant contends that this is a modification of the policy. The contract itself provides that any modification or change in its terms must be endorsed on the policy to be binding. The "M.N." provision was not endorsed on the policy.

It just doesn't make common sense that the meeting of minds of a Canadian insurance company doing busi-

ness and having a corporate residence in Cuba, as well as in a number of other countries, and a Cuban national in the execution of an endowment insurance policy that provides that all payments under the contract shall be in the currency of another country, also a corporate residence of the company, includes the intention that the only place of performance is in Cuba and the company is not obligated to perform at any other place. This is especially true when the law protects the insured from contracts prepared by the insurer by providing that their interpretation, if any ambiguity appears, shall favor the insured. Nothing in the policy limits performance of the option. The court should apply a rule which protects the insured. *Blanco v. Pan-American Life Insurance Co.*, 221 F. Supp. 219 (1963).

The appeal of the defendant company is sustained in No. 93, October Term, 1964 and judgment non obstante veredicto in favor of The Crown Life Insurance Company, the defendant-appellant, is directed to be entered; and the appeal of the plaintiff in No. 176, October Term, 1964, is sustained and judgment non obstante veredicto in favor of the plaintiff, Alicia Varas, is directed to be entered for the guaranteed cash surrender value of $3945 with interest from April 27, 1961.