Sonnenstein *v.* Massachusetts Mutual Life Insurance Company, Appellant.

Argued June 15, 1973. Before WRIGHT, P. J., WAT-
KINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and
SPAETH, JJ.

*William J. Kennedy,* with him *Dechert, Price &
Rhoads,* for appellant.

*David N. Rosen,* for appellee.

OPINION BY JACOBS, J., September 19, 1973:

The issue presented by this appeal is whether a party to a transaction can avoid that transaction because of the undue influence of a third person. We find that even if the undue influence of a third person has been proven by the appellee, she cannot avoid the transaction because the appellant, the other party to the transaction, had promised in good faith something of value before it knew of the undue influence.

Appellee, Harriet Sonnenstein [hereafter called the "wife"], was the owner and beneficiary of an insurance policy on the life of her husband. Appellant, Massachusetts Mutual Life Insurance Company [hereafter called the "insurance company"], was the insurer. At trial, before the court without a jury, the wife's testimony revealed that her husband, who had assigned this policy to his wife, later decided it was unnecessary to keep the policy in force since he had acquired sufficient assets from the sale of his business to provide for his wife in the event of his death. The husband procured a surrender form and asked his wife to sign it. At first, she refused to sign the surrender form since she wanted to keep the policy in force. Then, her husband threatened to not talk to her, to cut off her spending money, and to sleep in the guestroom. After more than 3 weeks of arguing, the wife succumbed to the pressure and signed the surrender form. This form and the life insurance policy were then given by the husband to a former agent of the insurance company who forwarded them to the company. After receipt of these, the insurance company in good faith processed the surrender and sent a check for the cash surrender value of the policy to the former agent, who had sent in the form and policy, to be given to the wife. Some days later, but before the wife received the check, her husband died. After receiving the wife's claim for the value of the insurance policy on her husband's life, the insur-

ance company defended on the ground that the wife had effectively surrendered the policy before her husband's death. At that point, the wife revealed that she signed the surrender form because of her husband's threats.

The lower court found that the wife had proven by the undisputed facts that she had signed the surrender form because of the undue influence of her husband. Furthermore, the court found that the transaction was avoidable by the wife even though the insurance company had processed the surrender and written a check to the wife for the cash surrender value. The court reasoned that the insurance company had not materially changed its position, since payment of the cash surrender proceeds was not made before the insurance company received notice of the undue influence. Judgment was entered in favor of the wife for the net death benefit under the policy.

In the present case, the insurance policy on the husband's life contained the following provision under the heading "Guaranteed Surrender and Nonforfeiture Provisions": "This policy may be surrendered for its cash surrender value which shall be equal to the value of this policy plus the value of any paid-up additions and any dividend accumulations and less any indebtedness."[1] Such a provision in an insurance policy has been held in Pennnsylvania, in accord with general contract law, to be a continuous, irrevocable offer which becomes a binding contract when accepted by the owner of the policy. *Varas v. Crown Life Ins. Co.*, 204 Pa. Superior Ct. 176, 203 A.2d 505, *allocatur refused*, 204 Pa. Superior Ct. xxxvii (1964), *cert. denied*, 382 U.S. 827 (1965). In *Varas*, Judge WATKINS, speaking for the Court, stat-

---

[1] No condition precedent, such as a default in the payment of premiums, was in the surrender provision. The insurance company, however, had the right to defer payment of the cash surrender value for a period of 6 months with an allowance for interest.

ed: "We believe that the cases are at one in holding that the rights of the parties are fixed when an option given by a policy is exercised by the insured [owner of the policy]." *Id.* at 184, 203 A.2d at 509. Generally, this offer is considered accepted and the policy is cancelled upon receipt by the insurance company of the policy and the request for cancellation by the insured (owner of the policy). *See* 3A J. A. Appleman & J. Appleman, Insurance Law and Practice §1757 (Rev. 1967). Thus, in *Murphy v. Home Life Insurance Co. of America,* 47 Pa. D. & C. 197 (1942), it was held that an owner's application for the cash surrender value of his insurance policy effectively surrendered the policy even though he died before he received the check for the cash surrender value from the insurance company. The same is true in this case. The surrender form stated: "The surrender of said policy shall be *effective on the date of receipt of this instrument,* properly executed, with the policy at the Home Office of the Company . . . ." [emphasis added.][2] In summary, there existed,

---

[2] In her brief, the wife argues that the surrender of the policy was not effective until she received payment of the cash surrender value. In support of this, she quotes the surrender form which states: "In consideration of the payment . . . of the amount payable . . . there is hereby surrendered by the undersigned, all right . . . to said policy . . .". We find, however, that payment was not required to effect the surrender. Otherwise, we would have to find that payment was a condition precedent to surrender or that the wife had made a counter-offer to the insurance company. We may not make these findings since they would conflict with the terms of the guaranteed surrender provision of the policy and the surrender form itself which states that "surrender of said policy shall be effective on the date of receipt of this instrument . . . with the policy . . .". Moreover, the understanding of the parties is not consistent with the interpretation now proposed by the wife. Both the lower court and the court en banc found that the wife knew that the policy would be cancelled if it and the surrender form were sent to the insurance company. We find that the statement quoted by the wife was simply a recitation of the insurance com-

here, an outstanding offer by the insurance company of a promise to pay the cash surrender value of the policy, upon its surrender by the owner.[3] This promise to pay the cash surrender value became binding on the insurance company when the policy and the surrender instrument executed by the wife were received.

At trial, there was no evidence to show that the insurance company was anything but an innocent party to the transaction. Moreover, the lower court made the following finding of fact, approved by the court en banc: "The signed surrender form was regular on its face and was received, processed and acted upon by Massachusetts Mutual in good faith, in the regular course of its business and without notice or reason to know that Harriet Sonnenstein's signature was obtained as the result of threats by her husband." However, the court en banc found that the Restatement of Contracts §477 (1932) (read with §496) made the surrender transaction voidable because there was no material change in position by the insurance company before it knew of the undue influence. The Restatement of Contracts §477 (1932) (read with §496) states: "Fraud

---

pany's binding obligation to pay the cash surrender value on surrender.

Nor are we impressed by the wife's argument that no surrender took place because she did not physically return the policy, that being done by her husband. She does not deny that she signed the surrender form which provided: "[T]here is hereby surrendered by the undersigned, all right, title and interest in and to said policy . . .". In our opinion that was an effective consent to the surrender of the policy by her husband who had gotten her to sign the form.

[3] The lower court in its discussion of law came to the same conclusion when it stated: "The defendant [insurance company] had an outstanding offer to pay the owner of the policy the cash surrender value of the policy at any time. This offer was apparently accepted when the cash surrender form was forwarded to the defendant. Acceptance was not contingent upon receipt of the proceeds of the policy."

or material misrepresentation [undue influence] by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto (a) has reason to know of the fraud or misrepresentation [undue influence] before he has given or *promised in good faith something of value* in the transaction or changed his position materially by reason of the transaction, . . .". [emphasis added]. This illustration follows §477: "A, who is not C's agent, fraudulently [by undue influence] induces B to contract with C to transfer property to C, who pays or promises to pay B the price agreed upon. C is ignorant of the fraud and acts in good faith. B cannot avoid the transaction."

In §496 of the Restatement of Contracts, the rule of §477 is said also to apply when duress or undue influence of a third person renders the transaction voidable. Comment *a* under §496 is as follows: "Only an innocent person who has given consideration or value by which a right or a discharge is obtained, can retain the benefit of the transaction." Similarly, it is stated in 17 C.J.S. Contracts §178 (1963) at 967: "[D]uress by a third person renders a contract voidable if the other party has reason to be aware thereof before he gives or promises in good faith something of value in the transaction . . .".

While the lower court's holding that the insurance company had not materially changed its position is disputable,[4] we need not discuss it because the insur-

---

[4] The lower court made the following finding of fact: "39. Starting when the original policy and signed surrender form were received at Massachusetts Mutual's Home Office on March 15, 1968, and continuously thereafter, Massachusetts Mutual treated this policy as surrendered and terminated, marked the policy surrendered on its records, discontinued charging premiums for the policy, issued a check payable to Harriet Sonnenstein for the net cash value left in the policy after premium loans had been satisfied and delivered said surrender proceeds check together with a sur-

ance company had "promised in good faith something of value in the transaction" before it learned of the undue influence which prevented the transaction from being voidable under §477 (read with §496) of the Restatement of Contracts. By becoming bound on its promise to pay the cash surrender value of the policy and by discharging the wife's obligation to pay premiums on the policy, the insurance company gave valuable consideration entitling it to retain the benefit of the transaction which was to be off the risk in the event of the death of the husband.

We hold that this surrender transaction was not voidable because of undue influence exerted on the wife, party to the transaction, by her husband.

Judgment reversed and entered in favor of the wife for the cash surrender value.

---

Dissenting Opinion by Hoffman, J.:

The majority does not dispute the finding of the court below that the appellee signed the surrender form solely as the result of undue influence exerted by her husband, and that he sent the form to the insurance company without her knowledge. These findings of fact, sustained by a court en banc, have the force and effect of a jury's verdict. Unless there is clearly insufficient evidence to sustain them, this court must accept them as true. *Schofield v. Crossman*, 420 Pa. 196, 216 A. 2d 455 (1966); *J. R. Christ Construction Co., Inc. v. Olevsky*, 426 Pa. 343, 232 A. 2d 196 (1967). The evidence of the appellee's absolute dependency upon her husband, his threats to move into another bedroom and cut off her allowance, and his protracted arguments, imploring her to sign the form, is sufficient to sustain the trial court's finding of undue influence.

---

render statement to Alvin Block [former agent]." These acts would not have been performed by the insurance company except for the receipt of the apparently valid surrender form with the policy.

Despite these facts, the majority holds that the surrender transaction cannot be avoided because the appellant relied upon the receipt of the surrender form and gave or promised something of value by issuing a check to the appellee. The appellant is therefore no longer obligated to pay the $50,000.00 in benefits provided by the policy, but is required only to pay the $319.16 surrender value thereof.

The majority's holding, under the circumstances of the instant case, rests upon a narrow and unrealistic interpretation of Section 477 of the Restatement of Contracts which provides:

"[Undue influence] by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto:

"(a) has reason to know of the [undue influence] before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction. . . ." This rule has never been interpreted by the courts of this Commonwealth, nor do cases from other jurisdictions aid us herein.

Comment (A) to Section 477 states that a party induced by undue influence to surrender something of value can avoid a transaction "unless the other party is *not only ignorant of the [undue influence]* when he enters the transaction, *but has either parted with value or has changed his position materially in reliance on the transaction.*" (Emphasis added.) Thus, the appellee was not bound by the surrender transaction absent some promise or giving of value by the appellant.[1]

---

[1] It is generally true that a contract comes into existence when an option is exercised by the owner of the policy, as in this case where the owners requested cancellation. *Varas v. Crown Life Insurance Co.*, 204 Pa. Superior Ct. 176, 203 A. 2d 505 (1964). This rule, however, assumes the voluntary and intentional exercise of the option. The question in the instant case is the effect of an *involuntary* surrender, on the enforceability of the option contract.

Appellant neither gave something of value nor materially changed its position so as to preclude the appellee from avoiding this transaction. Although the appellant issued a check, the instrument was delivered to its agent.[2] Since the check was in the agent's possession, the appellant could either have recalled the check or stopped payment on it. On these facts, it is unreasonable to conclude that the appellant effectively gave or promised something of value. Delivery of the check to the agent did not amount to delivery to the appellee.

It is not disputed, moreover, that the agent, who never testified, did not deliver the check to the appellee. The appellant offered no reason for the agent's failure to deliver it. By not delivering the check to the appellee, the company effectively denied the appellee the opportunity to renounce the transaction prior to her husband's death.

The facts of this case compel me to agree with the lower court that the appellee was entitled to avoid the surrender and demand payment on the policy. The company has not materially changed its position, but will merely be required to perform an obligation which had been in effect for seven years prior to the voidable surrender.

I would affirm the order of the lower court.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.

---

[2] The agent's contractual status as an employee and broker for the appellant had been terminated in 1966. He did, however, continue to act as an agent for the appellant with respect to all matters concerning the policy owned by the appellee. Appellant never notified the appellee of the agent's change of status and allowed him to continue acting in its behalf in repeated dealings with the Sonnensteins. See *Jennings v. Pittsburgh Mercantile Co.*, 414 Pa. 641, 202 A. 2d 51 (1964). 1 PLE, Agency, §22 (1957).