**NORSE PETROLEUM A/S, Plaintiff,**

v.

**LVO INTERNATIONAL, INC.,
Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Jan. 6, 1978.
Decided June 21, 1978.

S. Samuel Arsht and A. Gilchrist Sparks, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Louis J. Finger of Richards, Layton & Finger, Wilmington, and J. Denny Moffett, Conner, Winters, Ballaine, Berry & McGowen, Tulsa, Okl., of counsel, for defendant.

O'HARA, Judge.

This matter is before the Court on cross-motions for summary judgment. The central issue is whether the plaintiff, Norse Petroleum A/S ("Norse"), and the defendant LVO International, Inc. ("LVOI"), entered into a binding contractual agreement. An examination of the record reveals the following factual setting:

Norse is a joint stock company organized and existing under the laws of Norway, and is engaged in the exploration and development of petroleum resources. LVOI is a corporate vehicle for investments by farm cooperatives which constitute its shareholders. The cooperatives provide funds and credit to LVOI which, like Norse, is engaged in petroleum development.

Norse and Sante Fe International Corp. ("Sante Fe"), a California corporation, were the sole shareholders of Sante Fe Minerals (U.K.), Inc. ("SFM"), a Delaware corporation. Under their shareholders' agreement, Sante Fe and Norse were to provide for the financing of drilling operations in the United Kingdom sector of the North Sea. The financing was to be done in proportion to their respective ownership interests in SFM; Sante Fe having an eight-ninths interest and Norse, one-ninth.

In the summer of 1975 Norse entered into negotiations with LVOI to obtain financing for Norse's interest in the North Sea petroleum project. During the course of negotiations LVOI was represented largely by its President, Wayne E. Swearingen. In August, 1975, the parties met in Bergen, Norway to discuss the terms of their arrangement. Thereafter, they entered into a letter of intent dated August 20, 1975. The letter contemplated a financial agreement whereby LVOI would receive a call on all production of oil, gas, or other hydrocarbons to which Norse was entitled under its agreement with SFM. In return LVOI was to pay cash and assume certain of Norse's related financial obligations to SFM. Paragraph six of the letter of intent contained certain conditions including approval of the agreement by the Board of Directors of LVOI, to be obtained not later than at a scheduled Board meeting on September 23, 1975. The letter further provided that "any binding agreement on both parties must necessarily be the subject of a mutual satisfactory and definite contract."

After a meeting in Tulsa, Oklahoma, Norse and LVOI continued negotiations into September of 1975. Between September 15 and September 22, the parties negotiated a proposed arrangement by trans-Atlantic telephone and telex communications. Instead of the financial arrangement outlined in the letter of intent, this new arrangement was a proposal to buy outright the Norse position.

The first pertinent telex in the series was dated September 15, 1975. It was sent by Swearingen and confirmed LVOI's offer to purchase Norse's interest. After setting forth the major terms the telex provided:

"OUR BANK HAS GIVEN US A LETTER OF INTENT WITH MANY LOOSE ENDS, BUT TERMS ONLY SLIGHTLY TOUGHER THAN PREVIOUSLY ASSUMED, REFLECTING PERHAPS THE CHANGING MONEY MARKET. I REMAIN CONFIDENT THAT FINANCING WILL BE AVAILABLE ON SCHEDULE."

It also stated:

"INTERIM FINANCING AVAILABLE ONLY IN THE EVENT LVOI BUYS ALL NORSE STOCK IS PROPOSED TO COVER A MAXIMUM DELAY OF SIX MONTHS AND A MAXIMUM AMOUNT OF 3.5 MILLION DOLLARS WHEN AND AS CALLED BY SFM FROM DATE OUR BINDING DEAL IS SIGNED (PERHAPS EARLY IN OCTOBER) UNTIL APPROVAL FOR STOCK TRANSFER AND FINAL CONSUMATION OF SALE."

Norse sent a reply telex dated September 16 seeking to clarify the terms of the proposal. One of the concluding paragraphs of the message provided:

"I UNDERLINE THAT THE PROPOSITION HERE MADE IS ENTIRELY ON BEHALF OF THE TWO OF US AS NEGOTIATORS, AND HAS NEITHER BEEN INTRODUCED TO NORSE'S BOARD NOR STOCKHOLDERS' COMMITTEE, NOR TO OUR BANK DUE TO THE SHORTAGE OF TIME."

After some further exchanges Swearingen sent a telex dated September 18 on behalf of LVOI, the essence of which appears as follows:

"BUT BEFORE ANYTHING ELSE IS DONE YOU MUST UNDERSTAND I CANNOT AND WILL NOT MAKE ANY CONCESSIONS NOT ALREADY MADE. FURTHER, WE UNDERSTAND THAT OUR PROPOSAL MUST NOT BE USED TO TRADE WITH OTHERS. ACCORDINGLY, PLEASE BE ADVISED THAT IT IS SUBJECT TO PROMPT ACCEPTANCE AND MAY BE WITHDRAWN WITHOUT NOTICE.

I MUST HAVE ALL MATTERS OF SUBSTANCE CONFIRMED AND BE ABLE TO PRESENT A FIRM DEAL TO MY BOARD MONDAY EVENING SEPTEMBER 22 IN TYPED DRAFT FORM."

After still further communications, Norse sent the following message as part of a September 22 telex:

"REFERENCE IS MADE TO YOUR TELEXES OF SEPTEMBER 15, 17, 18 AND 19, 1975.

NORSE CONFIRMS ITS WILLINGNESS TO ENTER INTO YOUR PROPOSED STOCK TRANSFER DEAL BEING YOUR SECOND ALTERNATIVE AS OUTLINED IN YOUR SEPTEMBER 15 AND 17 TELEXES.

CONSEQUENTLY NORSE ACKNOWLEDGES AND ACCEPTS THE PRINCIPLES OF THIS DEAL AND THEREBY ALL MATTERS OF SUBSTANCE IN ACCORDANCE WITH OUR TELEX CORRESPONDENCE. PLEASE CONFIRM BY TELEX LVOI ACCEPTANCE AFTER YOUR BOARD MEETING IN CHICAGO SEPTEMBER 23.

NORSE WOULD APPRECIATE TO RECEIVE A COPY OF BOB MCGOWAN'S DRAFT AGREEMENT IN ORDER TO BE PREPARED FOR OUR FINAL MEETING IN NEW YORK."

The following day, however, Swearingen informed Norse by telex that LVOI was having difficulty with bank financing. While he expressed hope that the deal would still be completed, he stated that:

" . . . I MUST RELEASE YOU TO DEAL WITH OTHERS IF YOU CHOOSE TO."

Allegedly LVOI's bank, the Continental National Bank of Illinois, had altered the loan arrangement which it had proposed to LVOI. The new terms would have exposed LVOI's shareholders to considerably greater financial risks and so LVOI's Board refused to approve it. Subsequently, in October, 1975, Norse brought suit alleging a breach of contract on the part of LVOI.

Initially, the parties have raised a choice of law issue. Norse alleges that its September 22 telex is an acceptance; therefore, a binding contract was formed in Norway on that date. Morse further argues that since the contract was formed in Norway, the Court must apply Norwegian law.

A contract is considered to exist when the final act necessary for its formation takes place. *Filson v. Bell Tel. Labs, Inc.*, 82 N.J.Super. 185, 197 A.2d 196 (1964); *Varas v. Crown Life Insurance Company*, 204 Pa.Super. 176, 203 A.2d 505 (1964), cert. denied, 382 U.S. 827, 86 S.Ct. 62, 15 L.Ed.2d 72 (1965); 2 *Beale, Conflict of Laws*, § 326.1 (1935). Norse's telex of September 22 is purported to be an acceptance. Since an acceptance would have been effective as of the time it was transmitted, *Linn v. Employers Reinsurance Corporation*, 392 Pa. 58, 139 A.2d 638 (1958); *Restatement of Contract (Second)*, § 64 (Tentative Drafts Nos. 1–7, 1973), Norse's September 22 telex may have created a contract in Norway. As Norse has pointed out, the rule in Delaware is that the law of the place where a contract is formed determines its existence and validity. *Wilmington Trust Company v. Pennsylvania Company*, Del.Supr., 172 A.2d 63 (1961). Therefore, Norwegian law can properly be applied in this instance.

Norse has submitted two documents purporting to set forth certain principles of Norwegian contract law. One is the affidavit of Kai Krüger, a Professor of Law at the University of Bergen. The other is a sworn certificate setting forth a translation of certain Norwegian statutes. Although LVOI has raised several objections to both documents, the Court need not rule on their admissibility. Having examined the docu-

ments, the Court finds that neither sets forth any principles which conflict with the general law of contracts as applied in Delaware, nor which would control the outcome of the case as it presently stands. Therefore, the Court need only cite American law in the deposition of these motions.

■ In considering the respective motions for summary judgment, the Court must weigh the facts in light most favorable to the non-moving party. *Schagrin v. Wilmington Medical Center, Inc.*, Del.Super., 304 A.2d 61 (1973). In support of its motion LVOI alleges that a contract was never formed due to the failure of two conditions: first, the contract was never reduced to a formal, written document; and second, the contract was never approved by LVOI's Board of Directors. Norse, on the other hand, alleges that while the parties contemplated a formal contract, they did not intend to delay entering into a binding agreement until a written document was signed. Norse further alleges that approval by LVOI's Board was not a condition to the contract, but rather was merely a means of giving comfort to Norse by confirming LVOI's intention to carry out the agreement.

In support of its position Norse has filed the affidavit of Bjarne Reiber, who was Chairman of Norse during the period of negotiations. In his affidavit Reiber alleges that Wayne Swearingen represented to him that he and another LVOI officer, together with an Executive Committee, made LVOI's management decisions. Apparently the statement led Reiber to believe that approval of the contract by LVOI's Board would be perfunctorily granted once the endorsement of the Executive Committee had been obtained. According to a Swearingen telex of September 18 the substance of the proposal had been approved by the committee as of September 17. The Reiber affidavit also asserts that Norse was unaware of the financial structure of LVOI and, therefore, was not apprised of the fact that LVOI would require bank financing to consummate the contract. Accordingly, bank financing was not a condition prece-

dent to the contract and LVOI's refusal to recognize the agreement on that basis was unjustified.

■ In order to be granted a summary judgment, the moving party must always establish that no genuine issue of material fact exists. *State v. Wolcott*, Del.Supr., 83 A.2d 759 (1951). Norse alleges that the question of bank financing raises a factual issue. However, the statement that Norse was unaware of LVOI's need for bank financing appears questionable. The language of several of the telexes cited above clearly alludes to the problem of financing. In addition, a September 16 telex from Norse to LVOI which discussed the likelihood of governmental approval of LVOI as a substitute for Norse in the oil drilling project indicates knowledge on the part of Norse. The telex concluded that the required governmental approval would probably be forthcoming,

"ESPECIALLY WHEN LVO CAN BACK UP THEIR APPLICATION WITH A CONFIRMING LETTER FROM CONTINENTAL ILLUNOIS [sic], DECLARING ITS WILLINGNESS TO FINANCE ALL LVO'S OBLIGATIONS AND DUTIES AS 1/9TH SHAREHOLDER OF SFM."

■ However, even if the question of bank financing does not raise a genuine factual issue, the issue of whether the contract required the approval of LVOI's Board, does. In response to the Reiber affidavit LVOI has filed a counter-affidavit in which Swearingen denies ever representing that he and the Executive Committee made LVOI's management decisions. He contends that nothing short of Board approval could bind LVOI to the agreement. This genuine factual issue, in itself, precludes the Court from granting summary judgment.

There is, however, at least one other reason to deny these motions. In *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962) it was held that a summary judgment is not appropriate:

"[I]f, upon examination of all the facts, it seems desirable to inquire thoroughly into

them in order to clarify the application of the law to the circumstances."

This principle was more recently enunciated in *Smith v. Berwin Builders, Inc.*, Del.Super., 287 A.2d 693 (1972). The evidence introduced thus far does not sufficiently clarify the intent of the parties. The telex communications tend to equally support both the inference that a contract was formed and the inference that it was not formed. For example, it is difficult to determine from the telexes whether the parties were contemplating the signing of a formal document before becoming legally bound or were merely seeking to memorialize an otherwise binding agreement.[1] Therefore, it seems desirable to hear further evidence before deciding the issues.

One final matter should be touched upon briefly. LVOI has submitted documents purporting to be the minutes of certain meetings of its Board of Directors. Norse has objected to their admissibility. The Court, however, finds it unnecessary to rule upon the issue. The minutes could do no more than indicate the subjective intent of LVOI with regard to the proposed contract. It is a settled rule of contract law that a party's objective intent, i. e., its overt manifestations, which determine the existence of a contract, not its subjective intent. *"Industrial America", Inc. v. Fulton Industries, Inc.*, Del.Supr., 285 A.2d 412 (1971). Thus, for purposes of the present motions, the minutes could not be of crucial importance.

For the reasons set forth herein both the plaintiff's and the defendant's motions for summary judgment are denied.

IT IS SO ORDERED.

---

1. Examples of the type of evidence which is helpful in determining whether two parties intended to sign a formal document before being bound contractually can be found in the *Restatement of Contracts (Second)*, § 26, Comment C. (Tentative Drafts Nos. 1–7, 1973).