Jennings *v.* Pittsburgh Mercantile Company, Appellant.

Argued March 25, 1964.    Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

642

Henry E. Rea, Jr., with him Brandt, Riester, Brandt & Malone, for appellant.

Robert M. Entwisle, with him Alfred James Duff, and Miller, Hay, Entwisle & Duff, for appellees.

OPINION BY MR. JUSTICE COHEN, July 1, 1964:

Appellees, Dan R. Jennings, a Pittsburgh real estate broker, and his associate, Daniel B. Cantor, a New York real estate investment counselor and attorney, instituted this action of assumpsit against Pittsburgh Mercantile Company (Mercantile) to recover a real estate brokerage commission for the alleged consummation of a sale and leaseback of all of Mercantile's real property. Mercantile appeals from the lower court's denial of its motion for judgment n.o.v. after jury verdict for appellees.

The principal issue in this appeal is whether there was sufficient evidence upon which the jury could conclude that Mercantile clothed its agent with the apparent authority to accept an offer for the sale and leaseback thereby binding it to the payment of the brokerage commission, the agent having had, admittedly, no actual authority to so do.

Mercantile is a publicly-held corporation with over 400 shareholders. It is managed by a nine-member board of directors. An executive committee, consisting of the three major officers, functions between the board's quarterly meetings.

The facts in issue viewed in a light most favorable to appellees are as follows: In April, 1958, Frederick A. Egmore, Mercantile's vice-president and treasurer-comptroller, and Walter P. Stern, its financial con-

sultant, met with Jennings, explained Mercantile's desire to raise cash for store modernization and provided Jennings with information concerning Mercantile's finances. Jennings was asked to solicit offers for a sale and leaseback.

At this meeting Egmore made the following representations: (1) the executive committee, of which Egmore was a member, controlled Mercantile and (2) would be responsible for determining whether the company would accept any of the offers produced by Jennings; (3) subsequent board of directors' approval of the acceptance would be automatic. Egmore promised the payment of a commission if Jennings succeeded in bringing in an offer on terms as to amount realized, annual rental, and lease duration acceptable to the executive committee. Egmore outlined preliminarily the terms of an acceptable offer.[1]

In July and August, 1958, Jennings brought Egmore three offers, none of which met the originally specified terms. The first two were quickly rejected by Egmore. The third offer came close to the original terms. On November 4, 1958, Jennings was informed by Stern that the executive committee had "agreed to the deal."[2] However, within a week Egmore informed

---

[1] Although the evidence at various points refers to the actions of other members of the executive committee and to Stern, it is abundantly clear that Egmore was the principal actor with regard to the sale and leaseback. Our reasoning here regarding Egmore's apparent authority applies with equal force to the actions of other executive committee members and to Stern.

[2] Jennings testified as follows: "[On November 4,] Mr. Stern called me to tell me Mr. Egmore had told him [Stern] that he [Egmore] had spoken to [the other two members of the executive committee] and the three men had *agreed to the deal* and . . . we have to wait until tomorrow morning for [another broker] to see if he comes in with any better offer. I told Mr. Stern that I felt it was urgent that Mr. Egmore communicate with the buyer or his attorney . . . ." (Emphasis supplied). It is this vague statement of the executive committee, transmitted by Egmore to Stern, and

Jennings that the third offer had been rejected. Mercantile refused to pay Jennings' bill for commission of $32,000 and suit was thereafter instituted.

At the outset, we note that for Mercantile this proposed sale and leaseback was not a transaction in the ordinary course of business. Rather, it was unusual and unprecedented. The transaction envisaged Mercantile's relinquishment of ownership of all its real property, worth approximately $1.5 million, for a period of 30 years. Hence, the apparent authority which appellees seek to establish is the apparent authority to accept an offer for an extraordinary transaction.

Apparent authority is defined as that authority which, although not actually granted, the principal (1) knowingly permits the agent to exercise or (2) holds him out as possessing. *Simon v. H. K. Porter Company*, 407 Pa. 359, 364, 180 A. 2d 227, 230 (1962). See 2 Fletcher Cyclopedia Corporations §§449, 451 (1954).

Jennings strongly contends that Egmore's representations gave rise to the apparent authority asserted. We do not agree. Without regard to the extraordinary nature of a transaction, a disclosed or partially disclosed principal cannot be bound on the doctrine of ap-

---

from Stern to Jennings, which Jennings urges constituted the acceptance in this important transaction. It is more reasonable to assume, since Mercantile was merely soliciting offers rather than seeking an acceptance to its own offer, that the executive committee meant only that an advanced stage of preliminary negotiations had been reached. The meaning of "agreed to the deal" was clarified: Egmore's letter to the buyer's attorney, dated November 4, 1958, stated that the executive committee had "agreed to express *keen interest* in this offer. Of course, final approval has to be given by the board of directors . . . ." (Emphasis supplied). Here, "agreed to the deal" lacks the clear manifestation of intent requisite to a finding of acceptance, and "keen interest" is a strong manifestation that the stage of acceptance had definitely not been reached. Therefore, even were we to find for appellees on apparent authority, it would be doubtful that the jury's conclusion that there was an acceptance is supported by sufficient evidence.

parent authority by virtue of the extra-judicial representations of an agent as to the existence or extent of his authority or the facts upon which it depends. Restatement (2d), Agency §168 (1958). See Annot. 3 A.L.R. 2d 598, 602-607 (1949). An agent cannot, simply by his own words, invest himself with apparent authority. Such authority emanates from the actions of the principal and not the agent. Therefore, the representations upon which Jennings relies so heavily do not support his contention.

Jennings further argues that apparent authority arose by virtue of (1) certain prior dealings of Egmore and (2) the corporate offices held by Egmore. However, the evidence advanced in support of this argument is insufficient to permit a reasonable inference of the existence of apparent authority in Egmore to accept Jennings' offer.

Focusing on the first of these factors, in order for a reasonable inference of the existence of apparent authority to be drawn from prior dealings, these dealings must have (1) a measure of similarity to the act for which the principal is sought to be bound, and, granting this similarity, (2) a degree of repetitiveness. See, e.g., *Brientnall v. Peters*, 317 Pa. 356, 176 Atl. 240 (1935); *Colonial Trust Co. v. Davis*, 274 Pa. 363, 118 Atl. 312 (1922). See Restatement (2d), Agency §43(2) and comment b thereto (1958). Although the required degree of repetitiveness might have been present here, the prior acts relied upon consisted solely of Egmore's provision of financial information to Jennings and other brokers with regard to the sale and leaseback, and Egmore's solicitation of offers through them. The dissimilarities between these acts and the act of accepting the offer in issue are self-evident, and apparent authority to do the latter act cannot be inferred from the doing of the former.

As to the second of the above factors, the corporate offices of vice-president and treasurer-comptroller,

which Egmore held, do not provide the basis for a reasonable inference that Mercantile held out Egmore as having the apparent authority to accept the offers produced by Jennings. See *Gabriel v. Auf Der Heide-Aragona, Inc.,* 14 N.J. Super. 558, 82 A. 2d 644 (1951); *Miller v. Wick Bldg. Co.,* 154 Ohio St. 93, 93 N.E. 2d 467 (1950); *Mosell Realty Corporation v. Schofield,* 183 Va. 782, 33 S.E. 2d 774 (1945). Each of these cases involved a suit against a corporation for a brokerage commission for securing a purchaser for all of the corporation's realty. The principal issue in each was the apparent authority possessed virtute officii to consummate an extraordinary transaction. On facts stronger than those present here,[3] the claims of apparent authority were rejected. We hold likewise on the present facts, for any other conclusion would improperly extend the usual scope of authority which attaches to the holding of various corporate offices,[4] and would greatly undercut the proper role of the board of directors in corporate decision-making by thrusting upon them determinations on critical matters which they have never had the opportunity to consider.

The case of *Simon v. H. K. Porter,* supra, strongly relied upon by the lower court is not controlling. There, defendant Porter's offer of parcels of excess property were relatively small in comparison to its overall size and therefore did not contemplate a transaction of an extraordinary nature. Furthermore, Porter had definitely decided to sell, and in pursuance of this decision, it formulated an offer on rather definite terms and authorized its agent to seek acceptance thereof. In the case at bar, Jennings was merely author-

---

[3] These cases involved closely held corporations in which the alleged agent was also a dominant stockholder.

[4] See *General Electric Company v. N. K. Ovalle, Inc.,* 335 Pa. 439, 447, 6 A. 2d 835, 839 (1939); 2 Fletcher Cyclopedia Corporations §§506 (nn. 17, 18), 516, 549, 557 (n. 11), 605, 658, 690 (1954).

ized to solicit offers which Mercantile would then consider in deciding whether to sell, and if it did decide to sell, on what terms. While a reasonable inference of apparent authority to bind a principal to a contract may be drawn from the authority of the offeror's agent to seek acceptances, as in *Porter,* the same inference cannot be drawn from the authority of an offeree's agent merely to solicit offers, as here. Further, the authority of Porter's agent was communicated to the public via an advertisement in the Wall Street Journal. Additionally, Porter clothed its agent with apparent authority by permitting him to accept deposit checks and deposit same, sign deeds to the property, fully negotiate terms and consummate eight prior sales. The consummation of these sales was a major function of the agent and was in the usual course of his business responsibilities.[5] Porter is therefore clearly distinguishable.

Finally, the extraordinary nature of this transaction placed appellees on notice to inquire as to Egmore's actual authority, particularly since appellees were an experienced real estate broker and investment counselor-attorney team. See cases collected in 2 Fletcher Cyclopedia Corporations, §461, p. 405, n.96 (1954). Had inquiry been made, appellees would have discovered that the board never considered any of the proposals and obviously did not delegate actual authority to accept offers.

Appellees having failed to produce sufficient evidence upon which the jury could reasonably have found the existence of apparent authority to accept an offer for the sale and leaseback of all of Mercantile's real property, appellant is entitled to judgment n.o.v.

Judgment reversed and entered for appellant.

Mr. Justice ROBERTS concurs in the result.

---

[5] These facts are contained in part in the lower court's opinion, Court of Common Pleas of Philadelphia County.