Cecil SHAW

v.

J. LAURITZEN (Third-Party Plaintiff),
Appellant,

v.

T. HOGAN CORPORATION (Third-Party
Defendant), Appellee,

and

South Jersey Port Commission (Third-
Party Defendant).

No. 17773.

United States Court of Appeals,
Third Circuit.

Argued March 6, 1970.

Decided June 17, 1970.

Rehearing Denied Aug. 19, 1970.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa. (Robert B. White, Jr., Philadelphia, Pa., on the brief), for appellant.

Robert Cox, Krusen, Evans & Byrne, Philadelphia, Pa. (Carl A. Putz, Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before the court on appeal from the entry of a judgment in favor of a third-party defendant stevedoring company (T. Hogan Corporation—hereinafter "Hogan") and against the third-party plaintiff shipowner and operator (J. Lauritzen—hereinafter "Lauritzen") on the special verdict of the jury.[1] The jury had found Lauritzen liable to the plaintiff, an employee of Hogan, on the ground that unseaworthiness of the ship was the proximate cause of his fall from a ladder in the No. 3 hatch onto bulk nitrate which was being unloaded on May 31, 1963.[2]

First, Lauritzen contends that his motion for a directed verdict at the conclusion of the evidence should have been granted. He asserts that the evidence showed conclusively that the ladder from which plaintiff fell was unsafe, that Hogan's employees knew of its unsafe condition, and that they failed to report this to their employer, Hogan, so that remedial action could be taken, thus breaching its warranty of workmanlike performance. This contention must be rejected. There was ample evidence from which the jury could have found that there was no apparent defect in the ladder because a cone of welding material concealed the fact that the rung which came off in plaintiff's hand was not attached to the vertical angle or frame of the ladder. Budd (plaintiff's gang foreman and an employee of Ho-

---

1. Question 3(a) and the jury's answer to that question were as follows:

    "3(a) Did the stevedoring company (T. Hogan Corporation) by its agents or employees, breach its warranty to perform its job in a safe, proper and workmanlike manner with reasonable safety under the circumstances?
    "No."

2. All those portions of the transcript included in Lauritzen's Supplemental Appendix filed 1/26/70 had not been transcribed and filed in the District Court until 10/9/68 (see Document 102, reproduced at 92a–121a), even though the judgment was entered on 3/8/68. This delay of over seven months in securing a record, which record Lauritzen concedes by reproducing it in the appendix was necessary for determination of the post-trial motions and the appeal, illustrates the reasonableness of the District Court's establishing a rule designed to secure the prompt ordering of necessary transcript by the party challenging a judgment entered on a District Court verdict or finding. However, because of our decision on the merits of this appeal, it is not necessary to rule on Lauritzen's contention that he was denied due process of law by the application of District Court Rule 31 as the basis for denying the post-trial motions in this case. We note that, until August 16, 1968 (approximately five months after his post-trial motions were filed on 3/18/68), when he filed a Motion to Excuse Defendant * * * From Ordering Entire Transcript, Lauritzen took no action to comply with the second sentence of Rule 31, either by attempting to show "good cause" or in any other way. This sentence of the Rule provides:

    "Unless, within ten days of filing a post-trial motion, (a) the transcript is ordered by a writing delivered to the official court reporter, or (b) good cause for failure to order such transcript is shown in a motion supported by an affidavit, a copy of which is delivered to the chambers of the trial judge, the post-trial motion will be dismissed for lack of prosecution."

A similar ten-day period after filing a notice of appeal is provided for ordering transcript by F.R.A.P. 10(b).

gan) testified that he had been up and down the forward upper tween deck ladder in No. 3 hatch several times on May 31, 1963 (twice in the morning, a couple of times in the afternoon, between 6 and 7 P.M., and again at 7:45 P.M.), and that all the rungs in this ladder were firm and solid and were "strong enough to support any man that I have known". When he heard someone call, "Get the basket, there is a man hurt," he rushed "to the No. 3 hatch," descended the forward ladder, stepped over a missing rung, and found the plaintiff on his back with a rung of the ladder in his hand. The plaintiff said: "The rung pulled out". Also the plaintiff testified that "All the rungs looked good to me all the way down". At least two other witnesses testified that the ladder looked safe to them on the day of the accident.[3] The jury was not required to accept the testimony of the other two Hogan employees relied on by Lauritzen and there was no definite showing that either of the rungs which their testimony indicated was defective was the rung which pulled out in plaintiff's hand.[4]

The cases relied upon by appellant are inapplicable to the situation presented by this record, where at least four witnesses testified that the ladder appeared to be safe. In those cases, there was no such factual controversy for the jury to decide. See, for example, Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193, 197 (4th Cir. 1967) ("It is undisputed that the stevedore had knowledge of the unseaworthy condition and did nothing to remedy it

despite its opportunity to do so."); Mortensen v. A/S Glittre, 348 F.2d 383, 385 (2nd Cir. 1965) (" * * * the record * * * reveal[s] * * * that the plaintiff, Federal's employee, noticed the oil slick almost two hours before the accident. Although he had been explicitly instructed what to do in such situations and had available to him the equipment necessary to remove the dangerous condition, he neither did nor said anything about it.").

■ There is no reason why the federal practice of jury determination of factual issues should not have been followed in view of the conflicting testimony in this case. See Mihalchak v. American Dredging Company, 266 F.2d 875 (3rd Cir. 1959). Cf. International Terminal Operating Co. v. N. V. Nederl. Amerik, 393 U.S. 74, 89 S.Ct. 53, 21 L. Ed.2d 58 (1968); Byrd v. Blue Ridge Rural Elec. Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

■ Second, Lauritzen contends that it was reversible error for the trial judge not to include in his charge paragraph 12 of its Requests for Charge, which provided (p. 17 of Appellant's Supplemental Brief):

"12. If you find that a dangerous condition existed with respect to the ladder rung and that two or at least one of the stevedore's employees knew of it and failed to inform the stevedore's supervisory personnel, and T. Hogan Corporation, by its employees, failed to prohibit its employees from using the ladder, and this failure con-

---

3. 45a–46a and 50a–53a. One of these witnesses was a ship's officer (employee of Lauritzen).

4. The evidence indicates that the defective rung described by Green was indented and quite different in shape from the rung identified by plaintiff as P–3 (71a–75a and Exhibit TH–2). The rung referred to by Baskerville had a crack in its bottom side "as thin as that photograph", and he did not identify Exhibit P–3 as the rung with the thin crack in the bottom, although it appears to have been shown to him. Although the rec-

ord is not clear, he may have indicated to the jury on Exhibit L–7 that the rung with the thin crack in its bottom side came from the place on the ladder where Shaw testified Exhibit P–3 came out in his hand. Even if the jury accepted Baskerville's testimony as accurately describing P–3, Baskerville did not testify that the rung would not support his weight or that it was dangerous, so that the jury was not required to find that his failure to report his observation to his employer was negligence or a violation of the stevedore's warranty of workmanlike performance.

tributed to cause plaintiff's injuries, then you should find in favor of J. Lauritzen on his claim against T. Hogan Corporation. Mortensen v. A/S Glittre, 348 F.2d 383 (2 Cir. 1965)."

The trial judge rejected this Request and gave in its place Hogan's Request for Charge No. 7, as follows:

"7. If you find Baskerville and Green's failure to report the condition of a rung observed is negligence under the circumstances, that negligence may be imputed to employer T. Hogan Corporation and may be taken into consideration in determining whether T. Hogan Corporation performed its work in a reasonably safe, proper and workmanlike manner."

■ The above Request for Charge No. 12 was worded in a confusing manner in the light of the evidence, and it was not reversible error for the trial judge to refuse to read it. See F.R.Civ. P. 61.[5] As noted above (see footnote 4), plaintiff and his foreman had identified the defective rung (P-3) which caused the fall, whereas Green and Baskerville may have been referring to two different rungs since they did not identify Exhibit P-3. The above language contemplates that one of these two employees knew that "the ladder rung" causing plaintiff's injury (P-3) was defective prior to the accident. The jury might well have assumed from this language, given in a charge at the end of a 17-day trial, that plaintiff and the foreman, who had testified concerning P-3, had stated that they had noticed a defect in the rung prior to the accident.

■ The above-quoted Request for Charge No. 7 specifically identified Green and Baskerville as the witnesses on whose testimony Lauritzen was relying.[6] The language used in such Request No. 7 is consistent with several appellate decisions stating that the negligence of a stevedore's employees "is a factor to be taken into consideration on the issue of breach of the * * * [stevedore's] implied warranty." Lusich v. Bloomfield Steamship Company, 355 F.2d 770, 778 (5th Cir. 1966); see, also, Bertino v. Polish Ocean Line, 402 F.2d 863 (2nd Cir. 1968); United States Lines Company v. Williams, 365 F.2d 332, 336 (5th Cir. 1966), and cases there cited.

■ Furthermore, the trial judge read to the jury Lauritzen's Request for Charge No. 10, which was applicable if the jury found an unsafe condition existed and was known by the employees,[7] as follows:

"10. If you find that an unsafe condition existed and that T. Hogan Corporation, by its workmen, knew of

5. The approval by this court of Request No. 10 in Dziedzina v. Dolphin Tanker Corp., 361 F.2d 120, 122 (3rd Cir. 1966), relied on by Lauritzen, is inapplicable, since that Request required the unsafe condition to be "a substantial factor in causing the injury," whereas the words "contributed to cause" used here are significantly different, particularly where Green and Baskerville may have been referring to different rungs than Exhibit P-3. Also, the trial judge used the term "substantial" (see Restatement of Torts 2d, § 431) in his charge on proximate cause (N.T. 16 of Document 101), rather than the wording "contributed to cause" appearing in Lauritzen's Request 12.

6. In summarizing the major contentions of the parties during the charge, the trial judge reminded the jury of Lauritzen's argument on this point.

7. Hogan's Request No. 7 was a more specific application of the legal principle in this Request and not inconsistent with it. Request No. 7 focused the jury's attention on the testimony of Baskerville, who did not clearly state that the defect in the rung he observed made it appear unsafe, and of Green, who described a grossly bent rung not mentioned in the testimony of any of the other five witnesses observing the ladder on the day of the accident. When the charge is read as a whole, Lauritzen's contention that the reading of Request No. 7 constituted reversible error must be rejected. See Ely v. Reading Company, 424 F.2d 758 (3rd Cir. 1970); Wounick v. Hysmith, 423 F.2d 873 (3rd Cir. 1970); Trent v. Atlantic City Electric Co., 334 F.2d 847, 857, 859 and 868 (3rd Cir. 1964).

it and nonetheless exposed plaintiff to that unsafe condition, and that exposure was a substantial factor in causing the injury, the shipowner, J. Lauritzen, is entitled to recover over in his action against the stevedore, T. Hogan Corporation, all the plaintiff is awarded at your hands."

■ This court recently reaffirmed the applicable legal principle, using this language, in James v. Continental Insurance Company, 424 F.2d 1064 (3rd Cir. 1970):

"A party has no vested interest in any particular form of instructions; the language of the charge is for the trial court to determine. If, from the entire charge, it appears that the jury has been fairly and adequately instructed, as we find it was, then the requirements of the law are satisfied."

After consideration of the entire charge, we cannot say that refusal to grant a new trial because of the failure of the court to read Lauritzen's paragraph 12 and its action in reading Hogan's paragraph 7 were "inconsistent with substantial justice." See F.R.Civ. P. 61.

■ Also, in connection with Lauritzen's present objection to Hogan's Request No. 7, Lauritzen did not object to the reading of Request No. 7 before or after the charge was delivered (page 51 of Document 102, and N. T. 53 of Document 101), "stating distinctly the matter to which he objects and the grounds of his objection" (F.R.Civ.P. 51), but apparently relies on the affirmative response of the trial judge at the end of the charge to this statement of counsel for another party (N. T. 53 of Document 101):

"I assume all counsel have an automatic exception to any party's points that were read?"

Particularly in a case such as this, where there were 48 Requests for Charge read to the jury and a 42-page charge (N. T. 9 to 51 of Document 101), we reaffirm our statement in Trent v. Atlantic City Electric Co., 334 F.2d 847,

858 n. 4 (3rd Cir. 1964): "We take this opportunity to point out that the practice of granting automatic exceptions [to Requests for Charge] * * * runs contra to both the letter and spirit of Rule 51 of the Federal Rules of Civil Procedure."

We have carefully considered the other errors alleged by Lauritzen and find they have no merit. The judgment of the District Court will be affirmed.

Judge SEITZ concurs in the result.