**John W. SMITH**

v.

**PRESSED STEEL TANK CO. and Aqua-Chem, Inc.**

**Raymond L. THOMPSON**

v.

**PRESSED STEEL TANK CO. and Aqua-Chem, Inc.**

**Civ. A. Nos. 69–361, 69–509.**

United States District Court, E. D. Pennsylvania.

Feb. 20, 1975.

Joseph Lurie, Philadelphia, Pa., for plaintiffs.

Joseph E. Murphy, Philadelphia, Pa., for Pressed Steel Tank Co.

Barton L. Post, Philadelphia, Pa., for Aqua-Chem, Inc.

### MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter is presently before the Court on the plaintiffs' Motion for a New Trial. After carefully considering the grounds urged by the plaintiffs in support of their motion for a new trial, the Court has determined that it must deny the motion.

The plaintiffs, both long-term employees of the defendant companies, Pressed Steel Tank Co. and Aqua-Chem, Inc., brought separate actions seeking to recover from the defendants for respiratory ailments allegedly caused and/or aggravated by fumes and dust prevalent in the defendants' industrial plant while they were employed by the defendants. The plaintiffs alleged that the defendants, who were successive owners of the premises and successive employers of the plaintiffs, were negligent in the maintenance of the premises where the plaintiffs worked. The plaintiffs' cause of action was bottomed on the decision of the Pennsylvania Supreme Court in Perez v. Blumenthal Bros. Chocolate Co., 428 Pa. 225, 237 A.2d 227 (1968), which recognized the right of an employee to maintain an action of trespass against his employer for the employer's failure to protect the health and safety of his employee by exposing him to heavy dust causing aggravation of a pre-existing respiratory condition. The Pennsylvania Supreme Court held that the employee's action was not barred by the

Pennsylvania Occupational Disease Act, Pa.Stat. Title 77, § 1201 et seq.

The plaintiffs filed separate actions in this Court; however, the two actions being based on the same operative facts and legal principles, were consolidated and tried together. The issues of liability and damages were severed and the liability portion of the consolidated trial was submitted to the jury on special interrogatories in accordance with Rule 49(a) F.R.Civ.P. In accordance with the jury's answers to the special interrogatories, judgment on the issue of liability was entered in favor of the defendants and against both plaintiffs.

Within the mandatory ten-day period after entry of judgment, the plaintiffs moved for a new trial alleging in their motion nine specific grounds, as well as including in a closing paragraph of the motion a statement purporting to "reserve the right to add additional reasons for this new trial when the Notes of Testimony are transcribed." After filing the motion, the plaintiffs filed a brief in which five specific grounds were argued, three of which were asserted in the motion and two of which were raised therein for the first time. After the notes of testimony were transcribed, the plaintiffs submitted a supplemental brief. In the supplemental brief, the plaintiffs argued three grounds for a new trial, only two of which were raised in the motion, the third being raised for the first time in the supplemental brief.

■ Our Third Circuit has held that a District Court is without authority to grant a new trial for reasons assigned after the ten-day limit of Rule 59(b) F. R.Civ.P. which provides that a motion for a new trial "shall be served not later than 10 days after the entry of the judgment." Arkwright Mutual Ins. Co. v. Philadelphia Electric Co., 427 F.2d 1273 (3d Cir. 1970); Massaro v. United States Lines, 307 F.2d 299 (3d Cir. 1962). Moreover, the District Court is without authority to award a new trial for any additional reasons assigned aft-

er the ten-day limit of Rule 59(b) even where there is a statement in the motion which purports to reserve the right to file and specify additional grounds upon receipt of the transcript of testimony. Arkwright Mutual Ins. Co. v. Philadelphia Electric Co., *supra,* at 1275. The Court has, however, considered all of the grounds alleged by the plaintiffs even those which were untimely filed, and has determined that there is no basis for awarding a new trial. The Court will first consider the following eight alleged trial errors which were the only ones argued by the plaintiffs in their brief and supplemental brief:

(1) That the trial Court erred in rejecting plaintiffs' requested point for charge No. 12, relating to the duty of defendants to provide plaintiffs with proper and adequate equipment; (2) That the Court erred in refusing to charge "that the nature of the risk which Plaintiffs had to be said to assume in the instant case must be glaringly and obviously patent"; (3) That the Court erred in permitting defendants to question plaintiff Thompson in regard to pension benefits; (4) That the Court erred in ordering the testimony of plaintiffs' doctor stricken; (5) That the Court erred in permitting defendants to question witnesses in regard to comparing the conditions of the premises of defendants' plant with other plants; (6) That the Court somehow erred in connection with the peremptory challenges; (7) That the Court erred in admitting into evidence insurance forms which were executed by the plaintiffs; and, (8) That the Court erred in charging the jury on the defense of assumption of risk.

The *first* ground briefed by the plaintiffs in support of their motion for a new trial is that the trial Court erred in rejecting plaintiffs' requested point for charge No. 12 which read:

If you find that the defendants did not provide the plaintiffs with suitable equipment, face masks and a

proper ventilating system in the said premises you may find that they were negligent and if you further find that their negligence permitted heavy concentrations of dust, fumes and smoke which caused the aggravation of plaintiffs' pulmonary emphysema, and the plaintiffs were not guilty of contributory negligence and did not knowingly assume the risk of such harm, then your verdict should be in favor of the plaintiffs and against the defendant [sic].

The plaintiffs do not attack the instructions which the Court gave to the jury. As a matter of fact the plaintiffs took only one exception to the charge and that one exception was limited to the words used by the Court in its charge on assumption of risk. The plaintiffs contend, however, that the failure to charge in the language of their requested point for charge No. 12 removed an essential issue from the jury's determination, i. e., the duty of an employer to provide adequate and proper equipment to those working in the plant.

■ A party has no vested interest in any particular form of instruction; the language of the charge is for the Court to determine. The Court is not bound to give any instruction in the exact language submitted. If from the entire charge, read as a whole, it appears to the Court, as it does here, that the jury has been fairly and adequately instructed, then the requirements of the law are satisfied. Shaw v. Lauritzen, 428 F.2d 247 (3d Cir. 1970); Arkwright Mutual Ins. Co. v. Philadelphia Electric Co., 427 F.2d 1273 (3d Cir. 1970); Don Kemper Co. v. Beneficial Standard Life Ins. Co., 425 F.2d 221 (3d Cir. 1970); James v. Continental Insurance Co., 424 F.2d 1064 (3d Cir. 1970); Eberle Tanning Co. v. United States, 342 F.Supp. 1039 (M.D.Pa.1972); Sleek v. J. C. Penney Co., Inc., 208 F.Supp. 207 (W.D. Pa.1962). A reading of the entire charge shows that the Court adequately covered the issues set forth in plaintiffs'

requested point No. 12 and clearly instructed the jury as to the law applicable to said issues. Thus, the refusal to read plaintiffs' requested point No. 12 was not prejudicial error. The Court's charge shows that point No. 12 was adopted and incorporated by the Court in its instructions to the jury.

■ The *second* ground briefed by plaintiffs in support of their motion for a new trial is that the trial court erred by failing to tell the jury in connection with the defense of assumption of risk that the risk must be "glaringly and obviously patent". Plaintiffs in their point for charge No. 7 requested the Court to charge on the issue of assumption of risk as follows:

Plaintiffs do not assume risk of harm arising from defendants' conduct unless they know of the existence of the risk and appreciate its unreasonable character. The risk must be "glaringly obvious and patent".

A reading of the Court's charge on the issue of assumption of risk, read as a whole, shows that it adequately covered the issues regarding assumption of the risk and clearly set forth the applicable law. On assumption of risk the Court instructed the jury as follows (N. T. 7–38–39; 7–44–45):

[U]nder the law of the Commonwealth of Pennsylvania a party who knows of a danger and voluntarily places himself in a position where he must test that danger is deemed to have assumed the risk.

The burden of proving assumption of risk by a preponderance of the evidence in this case is on the defendants.

.    .    .    .    .    .

[U]nless you find that the defendants have carried their burden that either or both plaintiffs were aware of the existence of the inadequate ventilation and were aware that the condition was causing disease or aggravating their respiratory conditions and voluntarily

**434**

chose to place themselves in such a dangerous situation, you should not find the plaintiffs guilty of assuming the risk.

In making a judgment as to whether either or both plaintiffs assumed the risk the standard to be applied as to the risk involved is a subjective one which the particular plaintiffs, in fact, see, know, understand, and appreciate, and if by reason of age or lack of information, by reason of experience, intelligence, judgment, the plaintiffs did not understand the risk involved in a known situation they will not be taken to have assumed the risk.

You must also consider the alternatives which may have been available to the plaintiffs and whether they had any reasonable choice but to continue working under the conditions.

[A] party may learn of a danger at any time and prior to that time—that time that he learns of the nature of the danger—he would not be held to have assumed the risk. Subsequent to learning of it he could be held at that time to have assumed the risk.

The refusal of the Court to use the exact language suggested by the plaintiffs was not prejudicial error.

■■ The *third* ground briefed by the plaintiffs in support of their motion for a new trial is that the Court erred in permitting the defendants to question plaintiff Thompson in regard to his pension benefits. On direct examination of plaintiff Thompson the following ensued (N.T. 3–33):

Q. You have been working there from March of 1935 to March of 1968?

A. Actually, I worked there, I was on the payroll until the end of 1968, when I took my pension.

Then on cross-examination he was asked about the pension he referred to (N.T. 3–86–87):

A. As I gather, sir, you are out on a pension; is that correct?

Plaintiffs' counsel: Objection.

Defense counsel: He so stated in direct examination. You brought it out.

The Court: I will overrule the objection. I think it was testified to.

Plaintiffs' counsel: All right.

Q. When you retired you were working for Aqua-Chem; right?

A. That's right.

Q. Right. At any rate, you are being paid a pension by Aqua-Chem?

Plaintiffs' counsel: I don't know if he is.

Defense counsel: Well,—

Plaintiffs' counsel: You answer the question, if you know.

A. I applied for my pension from Aqua-Chem.

Q. Now was that predicated upon disability? Was it a disability pension or retirement pension? That's what I am trying to find out, because of ailments.

A. Disability pension, disability pension.

Q. Right. And you were at what age, sir, when that occurred in 1968?

A. I was fifty-eight years old.

Q. And when would you have been compelled to retire if you had no disability?

A. As far as I know, there wouldn't have been no requirement whatsoever.

The plaintiffs now contend that cross-examination on the question of plaintiff Thompson's pension was improper and prejudicial in that it constituted cross-examination on collateral matters, and thus, requires an award of a new trial. Plaintiffs' counsel did not object to the questions asked on cross-examination

concerning the nature of the pension, and, furthermore, it was the plaintiff himself who testified on direct concerning a pension. In fact at one point during the cross examination, plaintiff's counsel instructed his client to answer the questions. The failure of the plaintiffs to specifically object at trial precludes a consideration of the error alleged as a basis upon which this Court should grant a new trial. Rule 46 F.R. Civ.P.; Colonial Refrigerated Transp., Inc. v. Mitchell, 403 F.2d 541 (5th Cir. 1968); Curko v. Wm. Spencer & Son Corp., 294 F.2d 410 (2d Cir. 1961); Reck v. Pacific-Atlantic S.S., 180 F.2d 866 (2d Cir. 1950); 5A Moore's Federal Practice, ¶ 46.02. The Court finds that the cross-examination on the question of plaintiff Thompson's pension was not prejudicial error.

The *fourth* ground briefed by the plaintiffs in support of their motion for a new trial is that the Court erred in ordering the testimony of Dr. Sokoloff, a witness for the plaintiffs, stricken. It is difficult to understand this ground of alleged error. Contrary to the plaintiffs' contention, the Court denied the motion to strike and permitted the doctor's testimony to stand. Dr. Sokoloff, a witness for the plaintiffs, testified in response to a hypothetical question that, based upon reasonable medical certainty, it was his opinion that the conditions under which Mr. Smith worked aggravated his emphysema and bronchitis. On cross-examination Dr. Sokoloff was confronted with a report he had authored in which he stated: "If he [plaintiff Smith] worked under conditions in which there was extreme air pollution it is quite possible that this air pollution could have aggravated his condition" (N.T. 5–55); and on re-cross, Dr. Sokoloff testified as follows (N.T. 5–90–92):

Q. In your best medical opinion I think you said, without reference to time, both in response to Mr. Post's question and in your report of August 6, 1968, that if he, meaning Mr. Smith, worked under conditions in which there was an extreme pollution it is quite possible that this air pollution could have aggravated his condition? That's still the fact currently, isn't it?

A. Yes.

Q. That's your best medical opinion?

A. Yes.

Q. No matter what you said heretofore to this counsel, to this counsel, or to myself?

A. On the basis of the fact that there is very little absolute in medicine you can't make a definite statement all the time, so you have to qualify it, and this is my opinion. This is my opinion. I can't make an absolute statement here but that's my opinion.

Q. Right, just the way I read it to you?

A. That's right.

Defense counsel then moved to strike Dr. Sokoloff's testimony on the ground that his opinion as to causation of the plaintiff's disability fell below the standard required for causation.[1] The

1. Pennsylvania courts apply a stringent rule regarding the essentials of expert medical testimony when such testimony is required to establish a causal connection with the accident and plaintiff's injuries. In Menarde v. Philadelphia Transportation Co., 376 Pa. 497, 500, 103 A.2d 681, 684 (1954), the Pennsylvania Supreme Court stated the standard as follows:

[The medical] expert has to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence.

**436**

plaintiff Smith at this point requested that he be permitted to ask Dr. Sokoloff additional questions on the issue of causation. The Court granted the plaintiffs' request. Dr. Sokoloff was again questioned by the plaintiffs' counsel and again was cross-examined by the defendants. The Court then denied defendants' motion to strike the testimony of Dr. Sokoloff. Thus, the error alleged by the plaintiffs never occurred. The plaintiffs also argue that the further questioning of Dr. Sokoloff on the issue of causation gave the jury cause to question the doctor's credibility. It was the plaintiffs who requested to further question Dr. Sokoloff and the Court granted the plaintiffs' request. The plaintiffs, therefore, cannot claim prejudice as a result. Furthermore, the Court finds that there was no prejudice.

The *fifth* ground briefed by the plaintiffs in support of their motion for a new trial is that the Court erred in permitting defendants to question a witness who was the manager of defendants' plant during the period in question in regard to the conditions in the plant and conditions in other similar plants in which the witness was employed. The record indicates that the plaintiffs' counsel made no objection when defense counsel questioned the witness concerning conditions in other similar plants. Plaintiffs, in their motion, object for the first time. The objection is now untimely and cannot serve as a basis upon which a new trial may be granted. Under the circumstances of the instant case, plaintiffs' failure to raise specific objection at the time of trial precludes consideration of the error now alleged. Rule 46 F.R.Civ.P.

The *sixth* ground briefed by the plaintiffs in support of their motion for a new trial is that the Court somehow erred in connection with the number of peremptory challenges allowed the parties. The Court is unable to ascertain from the plaintiffs' brief (the only place where this error is alleged) whether the plaintiffs' position is that they did not receive a sufficient number of peremptory challenges or whether the defendants received too many. The Court has carefully reviewed the record and has been unable to find any exception taken by the plaintiffs to the number of peremptory challenges taken by the parties. There is no question that 28 U.S.C. § 1870 and the case law thereunder, hold that the trial judge shall have discretion as to the number of peremptory challenges. Standard Industries, Inc. v. Mobil Oil Corp., 475 F.2d 220 (10th Cir. 1973); Moore v. South African Marine Corp., 469 F.2d 280 (5th Cir. 1972); John Long Trucking, Inc. v. Greear, 421 F.2d 125 (10th Cir. 1970); Matanuska Valley Lines, Inc. v. Neal, 255 F.2d 632, 17 Alaska 425 (9th Cir. 1957). The statute and case law thereunder make it clear that the Court may consider several plaintiffs or defendants as a single party for the purposes of making challenges. The discretion exercised herein was not abused. Furthermore, the failure to raise any objection at the time of selecting the jury precludes consideration of the error now alleged. *Cf.* Miranda v. United States, 255 F.2d 9 (1st Cir. 1958).

Like holdings are McMahon v. Young, 442 Pa. 484, 276 A.2d 534 (1971); Yoworsky v. Charles Stores Co., Inc., 404 Pa. 643, 172 A.2d 822 (1961); and Wargo v. Pittsburgh Rys. Co., 376 Pa. 168, 101 A.2d 638 (1954). The issue of whether state law or federal law controls the sufficiency of evidence of medical causation was before our Third Circuit in Denneny v. Siegel, 407 F.2d 433 (3d Cir. 1969) and Sleek v. J. C. Penney Co., 324 F.2d 467 (3d Cir. 1963). The Circuit Court in both cases found it unnecessary to decide the issue because the expert testimony was insufficient, even when viewed under the most liberal interpretation of the federal standard. In *Sleek, supra,* our Third Circuit expressly held that medical testimony concerning the "possibility" of a causal relation was insufficient.

The *seventh* ground briefed by the plaintiff in support of their motion for a new trial is that the Court erred in admitting into evidence insurance forms which were executed by the plaintiffs while employed by the defendants. During cross-examination of the plaintiff Smith the following ensued (N.T. 2–214–215; 3–9);

Q. And in losing that time you had to fill out certain forms, and I won't mention the purpose of the forms, but you had to fill out certain forms indicating whether or not this condition you were complaining of was caused by your work.

Do you remember having to fill out—

A. Was caused by my work?

Q. Yes. Do you remember having to fill out those forms?

A. I never filled out any forms myself.

Q. You never filled out any forms yourself?

A. Not myself.

Q. You never signed any forms indicating whether the condition was caused or not caused by your work?

A. I may have signed a form but I never filled any out.

Q. If you were asked to put your signature on a form would you normally read the form before you signed your name?

A. Well, usually Mr. Purcell took care of the insurance and I trusted him and I would sign what he asked me to sign.

Q. You don't remember filling out the forms.

Do you remember taking any of those forms over to see or to be filled out by Dr. Lee, your family physician, your treating physician?

A. No. Whenever I am hospitalized my wife carries on all the business, actually.

Q. I will ask the question again, Mr. Smith.

Did you ever have occasion to take over one of those forms, any kind of form, to Dr. Lee for his completion?

A. Not me.

Q. Never?

A. No, sir.

Q. Do you, only from your own personal knowledge, know whether Dr. Lee said that your asthmatic condition was a result of your exposure at work or not related to work?

A. I don't know what he has on his records.

Q. Did you ever deliver any of those forms that were signed by Dr. Lee to Prudential or Prudential's agent?

A. I don't know where Prudential is.

And during the cross-examination of the plaintiff Thompson the following ensued (N.T. 3–150):

Q. But in reference to your respiratory condition I am asking you whether you filled out any form that you signed that asked you whether or not your respiratory condition was the result of exposure at work?

A. No.

Q. You never filled out such form?

A. No.

Q. Did you ever take such forms to your attending physician, either Dr. Stone or Dr. Byler?

A. No.

Q. Wherein they were asked whether the conditions you had were caused by your work?

A. No.

The defendant Aqua-Chem called to the stand the defendants' former plant

**438**

manager. He testified as follows concerning certain forms contained in the plaintiffs' personnel records (N.T. 6-35-36):

Q. Bill, can you tell us what your procedures are at the plant in reference to the filling out of those forms that we have referred to and whether you can identify those signatures by Mr. Thompson and Mr. Smith?

A. Yes. Well, the form, there is a part of the form that has to be filled in by the employee and the company has a section they fill in and then the back of the form. The employee submits that form to a doctor and the doctor fills in a form and then the employee turns the form back in into the company.

That's the general way on the works.

Q. OK.

A. The employee signs his part and the company signs their portion and the doctor signs his portion.

Q. Can you state whether these employees—Messrs. Thompson and Smith—signed these forms by looking at the forms?

A. I wasn't present when they signed them, but I would say it looks like their signatures, yes.

Q. You are familiar with their signatures?

A. Yes, through the files I have seen their signatures.

The forms contained declarations by the plaintiffs which stated that the respiratory illnesses did not arise out of their employment. The Court permitted these signed forms to be read to the jury for the sole purpose of impeaching the plaintiffs' credibility. The Court specifically instructed the jury as follows (N. T. 7-28):

In the course of this trial there was some testimony that the plaintiffs filled out certain forms in connection with an application for, I believe it was, health insurance benefits and I instruct you that the purpose of the questions in this area, I repeat, was to impeach the credibility of the witnesses by showing that they made prior inconsistent statements and you are to consider those questions and the answers for that purpose only, since I do instruct you that the existence of any such insurance that was referred to has no bearing whatsoever on the outcome of this case regardless of what your verdict may be. Just totally disregard it; it has nothing to do with the outcome of this trial.

The plaintiffs contend that the procedure utilized in placing the forms, containing prior inconsistent statements of the plaintiffs, into evidence was prejudicial. The plaintiffs contend that since they were not shown the forms in cross-examination, the defendants should have been precluded from introducing them in the defendants' case. At the time of cross-examination, defense counsel stated that the forms were not then in the courtroom but that they were under subpoena. In any event, during the cross-examination of the plaintiffs, questions were asked which laid a foundation concerning the forms. The record shows that plaintiffs' counsel made no objection to the use of the forms for impeachment purposes; nor was there any objection at the time the plaintiffs were cross-examined about signing forms. Under the circumstances, the failure to raise specific objection at the time of trial precludes consideration of the error now alleged. Rule 46 F.R.Civ.P. We wish to make note, however, that we see no error in the manner in which the forms were used to impeach the plaintiffs' credibility, when said forms were not shown or their contents disclosed to the plaintiffs at the time they were cross-examined. Milwaukee Gear Co. v. Chas. Benjamin, Inc., 466 F.2d 588 (3d Cir.

 

1972); United States v. Hibler, 463 F. 2d 455 (9th Cir. 1972); United States v. Bernstein, 417 F.2d 641 (2d Cir. 1969); Rule 613, Rules of Evidence for United States Courts and Magistrates (effective July 1, 1975); 4 Wigmore, Evidence, §§ 1259, 1260 (Chadbourn ed. 1972). The Court finds that the use of the forms for the sole purpose of impeaching the plaintiffs' credibility was not prejudicial error.

The *eighth* and final ground briefed by the plaintiffs in support of their motion for a new trial is that the Court erred in charging the jury on assumption of risk. The plaintiffs contend that there is not sufficient evidence in this record on which the jury could have found that the plaintiffs were aware that the conditions in the defendants' plant could cause lung disease or could aggravate existing lung disease problems. The plaintiffs never objected to the Court charging the jury on assumption of risk. As a matter of fact, the plaintiffs requested the Court to charge on assumption of risk, as heretofore discussed in this memorandum. The plaintiffs are, therefore, precluded from seeking a new trial based on this untimely objection. Rules 46 and 51 F. R.Civ.P.; Don Kemper Co. v. Beneficial Standard Life Ins. Co., 425 F.2d 221 (3d Cir. 1970). Moreover, there is sufficient evidence in this record which, if believed by the jury, could serve as a basis for the jury to find that the plaintiffs assumed the risk. The Court finds that submitting the issue of assumption of risk to the jury was not prejudicial error.

The plaintiffs raised four additional grounds in their motion for a new trial but did not brief them. We, therefore, assume that these four grounds have been abandoned by the plaintiffs. Notwithstanding the apparent abandonment of these grounds, we have carefully reviewed the entire record and find them to be without merit.[2]

Furthermore, as mandated by Rule 61 of the Federal Rules of Civil Procedure, "no error in either the admission or the exclusion of evidence . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice." The verdict in this case does not appear to the Court "inconsistent with substantial justice."

Accordingly, the following Order is entered:

### ORDER

And now, to wit, this 20th day of February, 1975, it is hereby ordered that the Plaintiffs' Motion for a New Trial is denied.

---

**2.** The defendant Pressed Steel Tank Co. has filed what has been termed a Motion to Strike Plaintiffs' Motion for a New Trial or in the alternative to Dismiss the Plaintiffs' Motion for a New Trial. The thrust of the defendant's motion is that the plaintiffs' motion for a new trial should be struck or dismissed because of untimely prosecution by the plaintiffs. Because of the view we have taken regarding the timeliness of the plaintiffs' motion and the disposition we have made of said motion, we need not consider the motion of defendant Pressed Steel Tank Co.