Edward J. JACOBSON

v.

James R. LEONARD and Jefferson Medical College of Thomas Jefferson University.

Civ. A. No. 72–2498.

United States District Court, E. D. Pennsylvania,

Jan. 8, 1976.

Edwin L. Scherlis, Philadelphia, Pa., for plaintiff.

William T. Adis, A. Grant Sprecher, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff commenced this diversity action against Dr. James R. Leonard and Jefferson Medical College ("Jefferson") to recover damages due to an alleged breach of contract, wherein plaintiff was to join the staff of Jefferson at the associate professor level. The case proceeded to trial and the jury found Jefferson in breach of contract and awarded damages in the sum of $21,500. Presently before the Court are Jefferson's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Viewing the facts in the light most favorable to plaintiff, the following facts were adduced at trial. In the fall of 1971, plaintiff, a citizen of the State of Colorado, received a telephone communication from Dr. James R. Leonard, Chairperson of the Department of Otolaryngology at Jefferson, regarding plaintiff's availability to join the staff of Jefferson in that department. Plaintiff expressed general interest in the position and, by subsequent letter, made arrangements to visit the Jefferson facilities in Philadelphia on December 18–21, 1971. He was to meet personally with Dr. Leonard. The visit subsequently took place, during which time plaintiff and Dr. Leonard discussed the particulars of the position, the salary range, academic title, and general hiring and promotional policies at Jefferson.

On December 29, 1971, Dr. Leonard wrote plaintiff and offered him the position of Chief of Audiology and Assistant Director of the Hearing and Speech Center, at the rank of assistant professor. The starting salary was to be $18,000 per year. Plaintiff, in his reply letter of January 6, 1972, expressed disappointment with Dr. Leonard's offer and stated that he desired not only to begin as the Chief of Audiology, but also as the Director of the Hearing and Speech Center and at the associate professor level. Dr. Leonard then offered plaintiff, in a letter dated January 13, 1972, the same position and starting salary as stated in the December 29 offer, but at the higher rank of associate professor, and the opportunity to become the Director of the Hearing and Speech Center at a later time if plaintiff's interim performance was satisfactory. On January 18, 1972, plaintiff accepted Dr. Leonard's latest offer and proceeded to make arrangements to move to Philadelphia, which included the sale of his house and termination of his employment in Colorado. By letter dated January 31, 1972, Dr. Leonard rescinded his offer for the reasons that the majority of the staff of the Hearing and Speech Center opposed plaintiff's joining the staff under the

terms contained in the January 13, 1972, letter, and that the rank and promotion steps contained in that letter would find little support at the level of the office of the Dean of the Medical School.

 In ruling upon a motion for judgment notwithstanding the verdict, the trial court, without considering the credibility of the witnesses, is compelled to view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 475 (3d Cir. 1973). Nevertheless, if upon review of the record it can be said as a matter of law that the verdict is not supported by legally sufficient evidence, a court may grant a judgment notwithstanding the verdict. *Urti v. Transport Commercial Corporation*, 479 F.2d 766, 768 (5th Cir. 1973); *Neville Chemical Company v. Union Carbide Corporation*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

In support of its motion for judgment notwithstanding the verdict, Jefferson contends that this Court erred in not granting its motion for a directed verdict at the conclusion of the evidence, because plaintiff knew that Dr. Leonard did not possess *final* hiring authority at the time he received Dr. Leonard's final offer included in his January 13, 1972, letter. After a careful review of the entire record in this case, the Court is constrained to agree with Jefferson's assessment of the evidence and must, therefore, grant the motion for judgment notwithstanding the verdict.

 There is no question that Dr. Leonard did not have express or implied authority to enter into binding employment contracts on behalf of Jefferson, and plaintiff did not attempt to prove

his case on the basis of such authority. Plaintiff did, however, contend and attempt to prove throughout the trial that Dr. Leonard had apparent authority to enter into binding employment contracts. Under Pennsylvania law,[1] apparent authority is defined as the:

> [P]ower to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407, 410 (1968).

*See Tanner Co., Inc. v. WIOO, Inc.*, 528 F.2d 262, 266 (3d Cir. 1975); *Reading Company v. Dredge Delaware Valley*, 468 F.2d 1161, 1163 (3d Cir. 1972); *Jennings v. Pittsburgh Mercantile Company*, 414 Pa. 641, 202 A.2d 51, 54 (1964); *Simon v. H. K. Porter Company*, 407 Pa. 359, 180 A.2d 227, 229–230 (1962); Restatement (Second) of Agency §§ 8, 27 (1958). However, Pennsylvania law also provides that a principal who has invested an agent with apparent authority is only bound to third persons who have "relied thereon in good faith," *Tanner Co., Inc. v. WIOO, Inc.*, supra, 528 F.2d 268; *Schenker v. Indemnity Ins. Co. of North America*, 340 Pa. 81, 16 A.2d 304, 306 (1940); *Edwards v. Heralds of Liberty*, 263 Pa. 548, 107 A. 324, 325 (1919),[2] or to third persons who have no notice of limitations upon an agent's authority. *Sabino v. Junio*, 441 Pa. 222, 272 A.2d 508, 510 (1971). *See Shipley v. Ohio National Life Insurance Co.*, 296 F.2d 728, 729 (3d Cir. 1961).[3]

---

1. This is a diversity action and, since all of the events which are relevant to a finding of apparent authority occurred in Pennsylvania, Pennsylvania law will be applied.

2. *See* Restatement (Second) of Agency § 8, comment c at 32, which states in pertinent part that "[a]pparent authority exists only to the extent that it is reasonable for the third

person dealing with the agent to believe that the agent is authorized."

3. *See* Restatement (Second) of Agency § 166, which states:

> A person with notice of a limitation of an agent's authority cannot subject the principal to liability upon a transaction with the agent if he should know that the agent is acting improperly.

■ Concerning notice of a limitation upon Dr. Leonard's authority to hire finally, plaintiff testified on cross-examination that at the time he met with Dr. Leonard in Philadelphia, Dr. Leonard informed him that his application for employment would have to be reviewed by an appointment committee.[4] In addition, Dr. Leonard's letter of January 13 "offering" plaintiff employment contained a reference to the "promotion and appointment committees." (See plaintiff's exhibit 6.) Plaintiff attempted throughout the trial to neutralize the effect of this knowledge by stating that, even though he knew an appointment committee existed, it acted only as a "rubber stamp" affirming whatever recommendation Dr. Leonard made to it. While it may be true that plaintiff subjectively believed that it was not possible for the appointment committee to turn him down, he is, nevertheless, charged with the knowledge that Dr. Leonard did not possess final hiring authority.

In *Tanner Co., Inc. v. WIOO, Inc., supra*, 528 F.2d at 268, the plaintiff entered into contracts with the general manager of a radio station to produce radio jingles and promotions. In holding that the plaintiff properly relied upon the apparent authority of the general manager, the court pointed to the fact that all of the contracts signed by the plaintiff and general manager contained a statement that the "[s]tation official signing this agreement certifies that he has the authority to make the agreement." Thus, the plaintiff relied upon the general manager's apparent authority in good faith because he had *no* knowledge of any limitations upon that authority. To the contrary, plaintiff in this case had both oral and written notice of limitations upon Dr. Leonard's hiring authority. As stated by the Pennsylvania Supreme Court in *Schenker v. Indemnity Ins. Co. Of North American, supra*, 340 Pa. 81, 16 A.2d at 306:

> While it is true that a principal may not hold his agent out in the character of one having general authority and bind third persons who have relied thereon in good faith by secret limitations and restrictions upon the agent's authority which are inconsistent with the character bestowed, it is equally well settled that a principal may confer on his agent as much or as little authority as he sees fit, imposing thereon such limitations as he thinks desirable, and that such limitations, even in the case of the so-called general agent, *will be . . . binding and conclusive upon third persons who know of them . . .* (Emphasis added.)

■ Therefore, this Court holds that plaintiff had knowledge that further steps of approval were required beyond Dr. Leonard's actions and that, in light of this knowledge, plaintiff could not have relied in good faith upon the apparent authority of Dr. Leonard.[5]

---

4. Plaintiff testified as follows:

"Q. When Dr. Leonard said to you that he was on the Appointment Committee and that there should be no problem, what problem did you feel that he was talking about?

"A. In terms of my coming on at Jefferson Medical College.

"Q. Then you knew at that point in time that there was an Appointment Committee that would have to pass upon your employment; is that correct? But you anticipated because of what Dr. Leonard had told you that there would be no problem?

"A. Yes, sir."

N.T. 3–51 to 3–52.

Further on, plaintiff again stated that he was aware of the appointment committee and that it would have to pass upon his application for employment. *See* N.T. 3–112 to 3–115.

5. The Court notes, alternatively, that even if we were to find in plaintiff's favor on the issue of apparent authority, it would be doubtful that the jury's conclusion that a contract was formed would be supported by legally sufficient evidence. In his letter of January 13, 1972, Dr. Leonard stated that the terms and conditions of employment he was about to set forth were "the best offer" he could make. However, the meaning of "the best offer" must be construed in light of the preceding language in the letter concerning the promotion and appointment committee, as well as plaintiff's discussion with Dr. Leonard concerning the committee during his visit to Philadelphia. As such, "the best offer" was not the type of offer which plaintiff could accept to form a binding contract, but was merely a recommendation which Dr. Leonard would pass along to the

■ In support of its motion for new trial,[6] Jefferson advances three arguments. The first two deal with the charge to the jury. Specifically, Jefferson contends that the Court did not properly instruct the jury as to Request for Charge No. 7, dealing with the definition of apparent authority, and Request for Charge No. 10, concerning notice to a third person of limitations upon an agent's authority, apparent or otherwise.

■ We start with the well-settled proposition that generally a party is not entitled to any particular language or form of instruction since the language to be read in the charge to the jury is for the trial judge to determine. If, upon reading the charge as a whole, it appears that the jury has been fairly and adequately instructed, then the requirements of the law are satisfied. *Shaw v. Lauritzen*, 428 F.2d 247, 251 (3d Cir. 1970); *Arkwright Mutual Insurance Co. v. Philadelphia Electric Company*, 427 F.2d 1273, 1276 (3d Cir. 1970); *James v. Continental Insurance Company*, 424 F.2d 1064, 1065 (3d Cir. 1970); *Smith v. Pressed Steel Tank Co.*, 66 F.R.D. 429, 433 (E.D.Pa.), *aff'd mem.*, 524 F.2d 1404 (3d Cir. 1975). A reading of the entire charge reveals that the Court more than adequately covered the issues set forth in Requests for Charge No. 7 and No. 10, and that the jury was properly instructed as to the law applicable to those issues. [N.T. 4–38 to 4–43.] In addition, the Court notes that Jefferson did not specifically take exception to that portion of the charge concerning Request for Charge No. 7 before the jury retired, as required by Rule 51 of the Federal Rules of Civil Procedure. [N.T. 4–61 to 4–63.] Consequently, absent a finding of fundamental error, which is not present here, any arguments concerning Request for Charge No. 7 do not present grounds for a new

trial. *Arkwright Mutual Insurance Co. v. Philadelphia Electric Company, supra*, 427 F.2d at 1276; *Kolman v. Jacoby*, 419 F.2d 395 (3d Cir. 1969).

The third and final argument which Jefferson advances in support of its motion for new trial is that the Court erred in excluding expert testimony on the usual and customary hiring practices of all medical colleges. At trial, we excluded that proffered testimony for two reasons. First, the relevancy to this case of the usual and customary hiring practices of medical schools was not demonstrated clearly enough to warrant receiving an expert opinion. [N.T. 3–136.] Second, there had not been enough evidence presented to show that plaintiff had either actual or constructive knowledge of the usual and customary hiring practices such that he could be held to be legally bound by those practices. [N.T. 3–137 to 3–141.] Having further examined this issue since the trial, the Court holds that the expert testimony was properly excluded.

■ Concerning the first basis for denial, there was no need to establish customary hiring practices through the use of expert testimony because Jefferson's actual hiring practices were contained in their own already established procedures, such as its by-laws and regulations, as well as its duly adopted practices.

■ Concerning the second ground, assuming that this subject was a proper matter for expert testimony in this case, Jefferson did not lay the necessary foundation to enable this Court to admit such testimony. Before the proponent of evidence of custom and usage in a particular trade or profession can introduce such evidence against his adversary, he must show that the party against whom it will apply either has actual knowledge of the custom and is

committee. *Compare Jennings v. Pittsburgh Mercantile Company, supra*, 414 Pa. 641, 202 A.2d at 53 n. 2.

**6.** Even though the motion for judgment notwithstanding the verdict will be granted, we

are required to also rule on the motion for new trial, in accordance with Rule 50(c)(1) of the Federal Rules of Civil Procedure. *See* 9 *Wright & Miller, Federal Practice and Procedure: Civil* § 2539 (1971).

bound by it for that reason, or that the custom is so well known or so widespread throughout the industry in question that the adverse party, under the law, should have such knowledge and is therefore bound by it. In the case before us, Jefferson was not able to establish that plaintiff had actual knowledge of the customs and usages with respect to hiring practices in · medical colleges throughout the United States. The only alternative left, therefore, was for Jefferson to establish, as the groundwork for the offering of this evidence, that knowledge of the customs of medical colleges with respect to hiring practices should be imputed to plaintiff because of their widespread use in the hiring process in which plaintiff was engaged. There is no evidence, however, that plaintiff was regularly or actively involved in hiring activities to such a degree that he could be said to be bound by the customs or usages in that activity. Indeed, the evidence showed that plaintiff was a novice as far as applying to medical schools for employment was concerned, having never previously applied for a position with a medical school and only once having applied for a faculty position at the college level. The Court did not believe at trial, and does not believe now, that one isolated hiring experience is sufficient to charge a party with knowledge of the customs and usages of hiring in medical colleges. As stated by the Fifth Circuit in *St. Louis Southwestern Railway Co. v. Garvey Elevators, Inc.*, 505 F.2d 625, 627 (5th Cir. 1974):

> [A]ll authorities agree that for a party to be bound by a custom or trade usage that modifies or supplants a written agreement, that party must have actual or constructive notice of the custom or usage. *See, e. g., PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 9th Cir. 1969, 417 F.2d 659, 662 n. 7, cert. denied, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99; *Belcher v. Birmingham Trust National Bank*, N.D.Ala.1968, 348 F.Supp. 61, 126; 3 A. Corbin, Contracts § 557, at 246–247

(1960); Uniform Commercial Code § 1–205(3) and comment 7.

*See Parkway Baking Company v. Freihoffer Baking Company*, 255 F.2d 641, 647 (3d Cir. 1958); 12A P.S. § 1–205(3).

An appropriate Order will be entered.